Ronald J. VAN POOL, James R. Hentz, Michael C. Papera, Daniel Sullivan, Patrick M. Skain, John P. O'Shea, and Matthew W. Plescia, Plaintiffs,

v.

The CITY AND COUNTY OF SAN FRANCISCO, a Municipality, San Francisco Commission of the City and County of San Francisco, a Municipal Agency, Art Agnos, Mayor of the City and County of San Francisco, Defendants,

San Francisco Black Firefighters Association, Chinese for Affirmative Action, et al., Applicants in Intervention.

Nos. C–89–4304 MHP, C–84–7098.

United States District Court, N.D. California.

Dec. 10, 1990.

Robert Ernest Gyemant, Dennis A. Babbits, San Francisco, Cal., for plaintiffs.

George Riley, Bruce T. Carolan, Eric J. Uhl, Deputy City Attys., San Francisco, Cal., for defendants.

Eva Jefferson Paterson, San Francisco Lawyers' Committee for Urban Affairs, Shauna I. Marshall, Equal Rights Advocates, William C. McNeill, III, Employment Law Center, Denise M. Hulett, Antonia Hernandez, Mexican–American Legal Defense and Educational Fund, Dennis Hayashi, Charis Moore, Asian Law Caucus, San Francisco, Cal. (Russell Galloway, Berkeley, Cal., of counsel), for applicants in intervention.

OPINION

PATEL, District Judge.

Plaintiffs bring this action for monetary, injunctive, and other relief under California Government Code §§ 12900–12996, Article I, § 8 of the California Constitution, and 42 U.S.C. §§ 1981 and 1983. The parties are now before the court on defendants' and defendant-intervenors' motion to dismiss or, alternatively, motion for summary judgment. Having considered the submissions and arguments of the parties, the court GRANTS summary judgment for defendants as to all four causes of action.

BACKGROUND

I. CONSENT DECREE

Plaintiffs, white male firefighters employed by the San Francisco Fire Department ("Department"), each sat for the H20 Fire Lieutenant qualifying examination in 1984. The name of each plaintiff subsequently appeared on the Civil Service list of those eligible to be promoted to fire lieutenant, with his ranking based upon the 1984 test results. In October 1986, during class action litigation before this court charging employment discrimination and racial harassment in the Fire Department, the City announced to the court that it would not defend the validity of several firefighter recruitment and promotional examinations, including the 1984 H20 test. The City Civil Service Commission then cancelled the related eligibility lists. *United States v. City and County of San Francisco*, 656 F.Supp. 276, 281 (N.D.Cal.1987) (*"Davis I"*); Joint Statement of Undisputed Facts ("Joint Statement") ¶¶ 1–7.

In February 1987, the court granted plaintiffs' motion for partial summary judgment in *Davis I* and found that the 1984 H20 selection and promotion procedures "[fell] within the definition of employment practices proscribed by Title VII." *Davis I* at 282. The court also awarded injunctive relief against the City, which included a mandate for development of new H20 tests.

Large portions of the permanent injunction were subsequently incorporated into a proposed consent decree. Paragraph 16 of

the decree provided that, within sixty days of its execution, the City would promote twenty-seven Black, Hispanic, and Asian or Filipino firefighters to the rank of lieutenant, selecting those who scored highest on the 1984 H20 exam as reflected in the eligibility list. *United States v. City and County of San Francisco*, 696 F.Supp. 1287, 1316 (N.D.Cal.1988) (*"Davis II"*), aff'd as modified sub nom. *Davis v. City and County of San Francisco*, 890 F.2d 1438 (9th Cir.1989), *cert. denied*, —— U.S. ——, 111 S.Ct. 248, 112 L.Ed.2d 206 (1990). The decree permitted the promotion of an additional forty-eight firefighters from the eligibility list, so long as twenty-five percent (25%) of those promoted were from the above-mentioned minority groups. *Id.*

## II. PARTICIPATION BY LOCAL 798

By order dated April 11, 1985, Local 798, International Association of Firefighters, AFL–CIO ("Local 798"), was given leave to intervene as a party-defendant in *Davis II*. Joint Statement ¶ 6; Joint Statement, Ex. B. The Union filed its answer in intervention on May 8, 1985. Joint Statement, Ex. C. None of the individual plaintiffs in the present action participated as a party or intervenor in either *Davis I* or *Davis II*.

In December 1987, following the grant of summary judgment for plaintiff-intervenors and the filing of the proposed consent decree, Local 798 filed specific objections to the proposed consent decree, including a challenge to the mandatory hiring of specific numbers of minority candidates. Joint Statement, Ex. E.

In its review of the statutory and constitutional validity of the consent decree, the court considered and rejected the objections made by the Union and by individuals and approved the decree on May 20, 1988. *Davis II*, 696 F.Supp. at 1307–11. Neither Local 798 nor any of plaintiffs signed the consent decree. Pl.Opp. at 5.

Pursuant to the decree, on June 30, 1988, the Department promoted eighty-one firefighters to the position of lieutenant. Order Granting Injunction, August 26, 1988, at 5; Joint Statement ¶ 13. None of the seven plaintiffs was promoted. All currently hold the rank of H2 firefighter in the Department. Joint Statement ¶ 1.

In December 1988, Local 798 filed an appeal from the court's approval of the consent decree with the Ninth Circuit Court of Appeals. Joint Statement, Ex. N. On December 4, 1989, the Ninth Circuit issued its decision affirming the court's approval of the consent decree and upholding the fairness and legality of the decree against Local 798's challenge. *United States v. City and County of San Francisco*, 890 F.2d 1438 (9th Cir.1989).

On August 7, 1990, Local 798 filed a petition for a writ of certiorari in the United States Supreme Court seeking review of the Ninth Circuit decision. Joint Statement, Ex. O. On October 9, 1990, the Supreme Court denied the petition. —— U.S. ——, 111 S.Ct. 248, 112 L.Ed.2d 206 (1990).

## III. PARTICIPATION BY PLAINTIFFS

Each of the plaintiffs has held continual membership in Local 798 since first joining the Department during the 1970's. Local 798 is the authorized collective bargaining agent for members of the Department. *Id.* at ¶ 2.

### A. *Fairness Hearings*

During the December 1987 fairness hearings on the proposed consent decree, plaintiffs O'Shea, Plescia and Van Pool were among the 113 persons who filed individual objections in addition to Local 798's objections to the decree. *Id.* at ¶ 10.

### B. *Departmental Complaint Procedure*

In July 1988, following the promotions mandated by the consent decree, plaintiffs Hentz, Papera, Plescia, Sullivan and Van Pool filed complaints of racial discrimination with the Department. Each complainant alleged that he had been denied promotion to the rank of lieutenant in favor of less qualified members of minority groups who had been promoted pursuant to paragraph 16 of the consent decree. Joint Statement, Exs. P, R, T, W, BB.

Barbara Phillips, court-appointed monitor for the consent decree, issued two reports in which she considered and rejected these individual claims of race discrimination on the ground that the consent decree was an appropriate and lawful remedy, that complainants were merely attempting to revisit objections that had previously been considered and rejected by the court in its initial approval of the decree, and that complainants had supplied no evidence to suggest that the promotional process failed to comply with the provisions of the decree. Report Rejecting Objections to Lieutenant's Promotion in June 1988, Joint Statement, Ex. E ("July Report"); Fourth Report Rejecting Objections to Lieutenant's Promotions in June, 1988, Joint Statement, Ex. F ("Fourth Report").

Although both the July Report and Fourth Report provided that individuals could file a request for court review of the monitor's rulings pursuant to Rule 53 of the Federal Rules of Civil Procedure, none of the plaintiffs filed such a request. Joint Statement ¶ 38.

### C. *DFEH Complaints*

Between August and October 1988, plaintiffs individually filed complaints with the California Department of Fair Employment and Housing ("DFEH"). Joint Statement, Exs. Q, S, U, Y, Z, CC, GG. Each complainant alleged that the City and County's implementation of paragraph 16 of the consent decree and the failure to promote him to the rank of lieutenant in June 1988 constituted discrimination on the basis of race. DFEH closed each case, finding that the city's denial of promotions to plaintiffs was mandated by and in accordance with the consent decree. DFEH then issued right-to-sue letters to plaintiffs. *Id.* at ¶¶ 19–21.

### PROCEDURAL HISTORY

Plaintiffs originally filed this suit in state court as a class action, collaterally attacking the consent decree on state constitutional and statutory grounds. The suit was removed to this court under the court's continuing jurisdiction over the consent decree. Plaintiffs then filed a First Amended Complaint, adding claims under 42 U.S.C. § 1981 and under the fourteenth amendment to the United States Constitution.

Plaintiffs subsequently filed a proposed Second Amended Complaint, adding claims under Title VII and under 42 U.S.C. § 1983, and moved for class certification. Both motions were heard on July 16, 1990.

At the hearing, the court identified deficiencies in the proposed amended complaint, including the following problems: the alleged discriminatory acts under section 1983 took place more than a year before the filing of the action, thus barring the suit under the applicable statute of limitations, Transcript July 16, 1990 at 12–17; many of the acts complained of were directly pursuant to the consent decree and so were also time-barred, Transcript at 14–15; and the claims of discriminatory environment were too abstract and amorphous. Transcript at 17, 19.

The court requested that plaintiffs redraft their proposed Second Amended Complaint to detail with specificity the nature of their section 1981 claims; the relevance of particular examinations and resulting lists; what happened to these particular plaintiffs within the one-year statute of limitations; and whether the complaint relates to subsequent examinations or appointments. The court further required that the amended claims under FEHA comport with and not exceed "the scope of the charge"; that the section 1983 claims detail with specificity particular adverse actions or conduct alleged to constitute a deprivation of due process; and that all actions or conduct in support of the section 1983 claim have occurred within the one-year statutory period. *Id.* at 22–23. In addition, plaintiffs withdrew their motion for class certification, *id.* at 23, and their Title VII claim.

Plaintiffs filed their redrafted Proposed Second Amended Complaint (hereinafter "Amended Complaint") on July 26, 1990. The complaint states that defendants have engaged in discriminatory employment practices in violation of (1) the California Fair Employment and Housing Act; (2) Article I, § 8 of the California Constitution; (3) 42 U.S.C. § 1981; and (4) 42 U.S.C.

§ 1983. The proposed complaint is no longer denominated a class action.

Defendants and defendant-intervenors now move for summary judgment and, with respect to pleading deficiencies in the Amended Complaint, for dismissal of defective claims without leave to amend. They argue first that plaintiffs' FEHA claims are barred by collateral estoppel on the ground that plaintiffs' interests and claims were adequately represented in Local 798's participation as intervenor and appellant in *Davis II*. In addition, defendants argue that the claim for relief under FEHA includes actions and events that exceed the scope of the charge filed with the DFEH, which concerned discrimination arising solely from the June 1988 promotions, and therefore must be dismissed.

Second, defendants argue that plaintiffs' claims under section 1981 are not cognizable under the Court's recently articulated standard in *Patterson v. McLean Credit Union*, 491 U.S. 164, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989), which requires that a cause of action under section 1981 allege interference with plaintiff's right to enter into contracts or to enforce contracts through legal process. Defendants assert that the actions complained of do not affect plaintiffs' rights to enter contracts or to enforce them through legal process. In addition, defendants argue that the claim under section 1981 is barred by the applicable statute of limitations.

Third, defendants argue that plaintiffs' claims under section 1983 must fail because they have alleged no acts constituting intentional discrimination causing cognizable harm to individual plaintiffs within the applicable statute of limitations.

Finally, defendants argue that the claim under Article I, section 8 of the California Constitution is collaterally estopped by previous litigation under section 1983 or, in the alternative, is barred by the one-year statute of limitations for general personal injury claims.

## DISCUSSION

### I. CLAIM FOR VIOLATION OF FEHA

Plaintiffs allege that defendants have engaged in employment practices, including but not limited to assignments, administration of Departmental rules, discipline, promotions and opportunities for advancement, in violation of the California Fair Employment and Housing Act ("FEHA"), Government Code §§ 12900–12996, which prohibits employment discrimination based, inter alia, on race, color, national origin, or sex. Plaintiffs allege damages including loss of earnings and benefits, promotional opportunities, and medical and psychiatric expenses incurred as a result of defendants' actions. They also seek attorneys' fees pursuant to Government Code Section 800.

The gravamen of plaintiffs' alleged cause of action appears to be a series of actions enumerated in paragraph 26 of the Amended Complaint, including the refusal to promote plaintiffs to the rank of lieutenant in June 1988, the denial of plaintiff O'Shea's request to participate in departmental recruiting, and specific administrative and disciplinary acts taken or not taken by the Department from February 1988 to the date of filing of the Complaint.

### A. Collateral Bar Against Attacks on Consent Decree

Plaintiffs individually filed administrative claims with the DFEH, each alleging that the June 1988 promotions mandated by paragraph 16 of the consent decree wrongfully denied him an opportunity for promotion in favor of minority candidates who were less qualified. Joint Statement, Exs. Q, S, U, Y, Z, CC, GG. DFEH rejected these complaints on the ground that the charges concerned conduct pursuant to the court's consent decree. Plaintiffs concede that their DFEH complaint alleged damages arising solely from the implementation of paragraph 16 of the consent decree. *Id.* at ¶ 22.

Paragraph 26B of the Complaint alleges that the June 1988 promotions wrongfully denied promotions to plaintiffs. Defendants allege that insofar as plaintiffs' cause of action under FEHA challenges the legality of the June 1988 promotions and implementation of the consent decree,

plaintiffs are collaterally estopped from relitigating that issue, which was fully and fairly litigated and finally decided in protracted litigation by Local 798 on behalf of its members. The issue of harm to non-minority members of the Department was fully briefed and decided by this court and by the Ninth Circuit, and the Supreme Court denied certiorari.

Although plaintiffs were neither name parties to the *Davis II* litigation nor signatories to the consent decree approved there, the court finds that plaintiffs are precluded from collateral attack on the consent decree and promotions made pursuant to paragraph 16.

### B. *Collateral Estoppel*

■ Issue preclusion "bars the relitigation of all issues that were litigated in a prior proceeding, even if the second proceeding is an action on a claim different from the one asserted in the first action." *Shaw v. California Dept. of Alcoholic Beverage Control,* 788 F.2d 600, 605 (9th Cir.1986). This court must look to the law of California to determine the preclusive effect of prior litigation. California courts apply collateral estoppel where: "(1) the issue decided in the prior adjudication is identical to the issue presented in the second action; (2) there was a final judgment on the merits; and (3) the party against whom estoppel is asserted was a party or in privity with a party to the prior adjudication." *Hirst v. State of California,* 770 F.2d 776, 778 (9th Cir.1985).

1. *Identity of issues.* The mandatory promotions challenged here by plaintiffs were fully evaluated and their legality upheld by this court and by the Ninth Circuit against statutory and constitutional challenges. The court scrutinized the affirmative action plan mandated by the decree under both Title VII and the equal protection clause of the fourteenth amendment, using a two-part test requiring (1) adequate justification for the use of affirmative action and (2) a finding that the plan does not unnecessarily burden the rights of non-minority employees. *Davis II,* 696 F.Supp. at 1301–11. The court applied a "strict scruti-

ny" standard of review, requiring that the terms of the decree be narrowly tailored to achieve a compelling governmental purpose. *See id.* at 1307–09 (citing *United States v. Paradise,* 480 U.S. 149, 177, 107 S.Ct. 1053, 1070, 94 L.Ed.2d 203 (1987)).

In evaluating the burden of the decree on non-minority or male employees of the Department, the court expressly found that the terms of the decree "do not unnecessarily trammel the rights or uproot the legitimate expectation of nonminority or male employees and therefore do not impose an unacceptable burden." *Davis II,* 696 F.Supp. at 1310. The court noted that the decree imposed neither layoffs nor an absolute bar to the advancement of white males within the Department. The court also found that the mandatory promotion of thirty-three minority firefighters to the rank of lieutenant did not unacceptably burden white male firefighters because the decree expressly permitted the promotion of a large number of nonminority male firefighters to the rank of lieutenant. *Id.*

The Ninth Circuit approved the district court's use and application of the *Paradise* analysis to the terms of the consent decree, with the single exception of the duration of the decree, which it modified. *Davis v. City and County of San Francisco,* 890 F.2d at 1447–49. The court of appeals specifically addressed the Union's argument that the decree was not narrowly tailored because it allowed the hiring of unqualified persons; contained rigid, fixed quotas; lasted for an unreasonable period of time; contained hiring goals unrelated to past harm; and trammeled the rights of non-minorities "by failing to provide for the promotion of White firefighters and by uprooting promotion expectations." *Id.* at 1447.

The Ninth Circuit found the Union's arguments, except as to the duration of the decree, "without merit." It rejected the Union's argument that the decree violated the rights of white male firefighters by failing to require the promotion of any persons in that class, noting that *Paradise* permits a governmental entity's use of race-conscious classifications only where essential to remedy unlawful discrimina-

tion, and finding that no evidence had been presented suggesting discrimination against white male firefighters. *Id.* at 1148.

The Ninth Circuit also reaffirmed the district court's finding that the terms of the decree did not impose an absolute bar to the advancement of non-minorities because the mandatory promotion of minority firefighters was balanced by the provision for optional promotion of forty-eight additional firefighters, seventy-five percent (75%) of whom could be nonminority members. *Id.* at 1148–49.

Thus, in upholding the legality of the consent decree under both Title VII and the strict scrutiny required by the equal protection clause of the Constitution, this court and the Ninth Circuit expressly found that the plan, and specifically the June 1988 promotions mandated by paragraph 16 of the consent decree, did not unnecessarily trammel the interests of white firefighters in precisely the position occupied by plaintiffs.

2. *Final adjudication.* It is clear from the preceding discussion that the issue of the extent and legality of the decree's burden on non-minorities and men was fully and finally adjudicated. In its Objections to the Consent Decree, the Union briefed at length the issue of the impact of the mandated promotions on white firefighters. Joint Statement, Ex. D at 31–43. These objections were renewed in the Union's brief to the Ninth Circuit, Joint Statement, Ex. N at 39a–41a, and in its petition for a writ of certiorari to the United States Supreme Court. *Id.*, Ex. O at 11–16.

This court and the Ninth Circuit expressly considered and rejected the Union's arguments, holding and affirming that the terms of the consent decree were narrowly tailored to achieve a compelling purpose and did not unnecessarily trammel the rights of non-minorities. The Ninth Circuit denied the Union's petition for rehearing and its request for rehearing *en banc. Id.* at 10.

3. *Privity of parties.* In the context of collateral estoppel, the concept of identity or privity of parties

need not be defined in a rigid manner.... A person technically not a party to the prior action may be bound by the prior decision if his interests are so similar to a party's that that party was his "virtual representative" in the prior action. A finding of virtual representation may be based on an express or implied legal relationship that makes a party to the prior action accountable to a non-party.

*United States v. Geophysical Corp.,* 732 F.2d 693, 697 (9th Cir.1984) (holding limited partners collaterally estopped by prior action of partnership) (citations omitted).

The conduct and the arguments of Local 798 in opposition to the consent decree demonstrate a clear identity of interests between the Union and the plaintiffs in this case. Courts have routinely held that a decision against a union can bind union members in a subsequent action. *See, e.g., Handley v. Phillips,* 715 F.Supp. 657, 666–67 (M.D.Pa.1989) (plaintiff union member collaterally estopped from relitigating terms of collective bargaining agreement where union had raised the issue in arbitration and in state court and where plaintiff had opportunity to assert her rights as union member); *Stokes v. Board of Trustees of Temple University,* 683 F.Supp. 498, 502 (E.D.Pa.1988) (union prosecuting action on behalf of members deemed to be in privity with them for purposes of collateral estoppel, even though plaintiffs were not parties to action), *aff'd,* 872 F.2d 413 (3d Cir.1989).

Local 798 gave its members ample opportunity to remain informed and provide feedback concerning the ongoing litigation. It held regular membership meetings and gave the membership periodic reports on the status of the litigation. Members have had opportunities to vote on whether to pursue legal challenges to action taken by the Department pursuant to the consent decree. Joint Statement ¶ 37. The Union also assisted its individual members in filing objections to the consent decree by providing information and relevant forms.

*Id.* at ¶ 11.[1]

■ Plaintiffs seek to avoid the effects of collateral estoppel by invoking the recent Supreme Court decision in *Martin v. Wilks*, 490 U.S. 755, 109 S.Ct. 2180, 104 L.Ed.2d 835 (1989). In *Martin*, the Court narrowed the scope of the impermissible collateral attack doctrine, holding that "[a] judgment or decree among parties to a lawsuit resolves issues as among them, but it does not conclude the rights of strangers to those proceedings." *Id.* 109 S.Ct. at 2184. However, the court in *Martin* expressly recognized an "adequate representation" exception: "We have recognized an exception to the general rule when, in certain limited circumstances, a person, although not a party, has his interests adequately represented by someone with the same interests who is a party." *Id.* at n. 2 (citing *Hansberry v. Lee*, 311 U.S. 32, 41–42, 61 S.Ct. 115, 117–18, 85 L.Ed. 22 (1940)).

The court finds that in light of the Union's conduct of the *Davis* litigation and its relationship with plaintiffs throughout that process, plaintiffs are squarely within the "adequate representation" exception of *Martin*, precluding further attack on the legality of the consent decree.

First, the facts in *Martin* are clearly distinguishable. The Court in *Martin* permitted white firefighters to collaterally attack a consent decree among African-American individuals, the city of Birmingham, Alabama and the Jefferson County Personnel Board on the ground that neither the white firefighters nor their union had been permitted to intervene in the litigation. *Id.* 109 S.Ct. at 2183. In this case, however, the court granted Local 798's motion to intervene as a party defendant in *United States v. City and County of San Francisco*. Joint Statement ¶ 6. The Union fully participated as a party by filing its answer in intervention in that litigation, Joint Statement, Ex. C; by appealing the court's decision to the Ninth Circuit, *id.*, Ex. N; and by filing a petition for writ of

certiorari with the Supreme Court. *Id.*, Ex. O.

Secondly, the conduct of Local 798 and the arguments it advanced during the litigation and appeals process demonstrate that it adequately represented the interests of plaintiffs in this suit throughout. Although adequacy of representation is question of fact, *Social Services Union, Local 535 v. County of Santa Clara*, 609 F.2d 944, 947 (9th Cir.1979), the record is clear that the Union vigorously litigated the issue of the effect of mandatory promotions of minority members on white male firefighters. Plaintiffs nowhere deny this, and the Union's subsequent refusal to sign the consent decree is further evidence of its identity of position and interests with the present plaintiffs.

Plaintiffs' efforts to evade the "adequate representation" exception of *Martin* are unavailing. Plaintiffs argue that although Local 798 "litigated ... issues related to plaintiffs' claims herein, it did not assert the specific claim of each of these plaintiffs[,]" Pl.Opp. to MSJ at 13, and contend that collateral estoppel should not apply because "[t]he fact that these plaintiffs have been discriminated against was never before this Court nor before the Ninth Circuit." *Id.* at 15. However, the permissibility of collateral attack does not depend upon a court's deciding whether the terms of the consent decree specifically violated the rights of plaintiffs Van Pool, Hentz, Papera, Sullivan, Skain, O'Shea and Plescia. Rather, the issue plaintiffs seek to litigate and which has already been litigated by the Union on their behalf is whether the rights of non-minority and male firefighters were unnecessarily trammelled by the terms of the consent decree.

Moreover, plaintiffs' citations in support of their strained position are inapposite and inapt. Plaintiffs cite *Wygant v. Jackson Bd. of Education*, 476 U.S. 267, 106 S.Ct. 1842, 90 L.Ed.2d 260 (1986), for the proposition that a union's challenge to school

1. Plaintiffs allege that they complained to their union representatives and expressed displeasure at the way in which Local 798 was handling the litigation in *Davis II*. However, plaintiffs' citation to the Joint Statement provides no evidentiary support for this allegation, and plaintiffs provide no other basis to support it.

board actions does not estop later litigation by non-minority members. However, the configuration of parties and issues in *Wygant* is fundamentally different from that presently before the court. In *Wygant*, the union together with *minority teachers* who had been laid off had, in previous litigation, challenged the school board's failure to adhere to terms of a collective bargaining agreement which would have resulted in the layoff of some tenured non-minority teachers while retaining minority teachers on probationary status. *Id.* 106 S.Ct. at 1844. The *Wygant* plaintiffs were displaced *nonminority* teachers protesting the lower court's order to implement the layoff provisions of the collective bargaining agreement. Their interests and position on the layoff provisions were therefore neither identical to, nor represented by, their union.

*Mann v. City of Albany, Ga.,* 883 F.2d 999 (11th Cir.1989), also cited by plaintiffs, is distinguishable as well. In *Mann*, the court reversed a district court finding that a white applicant, challenging the implementation of a consent decree, had been "virtually represented" by the city of Albany, the defendant in the underlying suit. *Id.* at 1003. The court found that the city was in the position of "a disinterested stakeholder with respect to the contested promotions[,]" and had "no legal duty" to support the interests of the plaintiffs. *Id.* at 1004. The court concluded that the plaintiff had not been "virtually represented" by the city, finding no evidence that the challenged policy's validity had been put through "meaningful adversarial testing." *Id.*

In contrast, Local 798 has vigorously and consistently challenged the legality of the consent decree in asserting the interests of non-minority white firefighters. Plaintiffs nowhere dispute the persistence and vigor of this advocacy.

Plaintiffs are therefore precluded from revisiting in this suit the issue of the legality of the June 1988 promotions or their implementation.

## C. Claims Exceeding the Scope of the Administrative Charge

When an employee seeks relief from the court for claims not contained in the original charge before an administrative agency, a federal court may hear those claims only if they are "like or reasonably related to the allegations of the [administrative agency] charge." *Brown v. Puget Sound Elec. App. & Train Trust,* 732 F.2d 726, 729 (9th Cir.1984) (quoting *Oubichon v. North American Rockwell Corp.,* 482 F.2d 569, 571 (9th Cir.1973)), *cert. denied,* 469 U.S. 1108, 105 S.Ct. 784, 83 L.Ed.2d 778 (1985). The same "like or reasonably related" standard applies when the charge is first filed with a state agency. *Oubichon,* 482 F.2d at 571; *see also Baker v. Children's Hospital Medical Center,* 209 Cal. App.3d 1057, 1065, 257 Cal.Rptr. 768 (1989).

Claims not so related are to be brought first before the appropriate administrative body, which "must be afforded an opportunity to consider disputes before federal suits are initiated." *Id.* at 730; *see also Hudson v. Moore Business Forms, Inc.,* 609 F.Supp. 467, 471 (N.D.Cal.1985) (finding no exhaustion where plaintiff's wage discrimination claim was not encompassed by DFEH claim alleging discrimination with respect to transfer and termination), *aff'd in part, vacated in part on other grounds,* 827 F.2d 450 (9th Cir.1987).

At the hearing on July 16, 1990, plaintiffs were instructed to either redraft their FEHA complaint to comport with the "scope of the charge" or risk dismissal. Although plaintiffs concede that their initial complaints before the DFEH challenged only the implementation of the June 1988 promotions, the Amended Complaint submitted in response to the hearing cites events and actions that range far afield of any possible challenge to those promotions. Specifically, paragraphs 26A, 26C, 26D, 26E, 26F, 26G, 26H, 26I, and paragraphs 28–30, all incorporated by reference in plaintiffs' cause of action under FEHA, exceed the scope of the charge.

Therefore, because plaintiffs are collaterally estopped from challenging the legality of the June 1988 promotions under para-

graph 26B, and because the remaining allegations exceed the scope of the FEHA charge, plaintiffs' cause of action under Government Code §§ 12900–12996 is DISMISSED.

## II. CLAIM FOR VIOLATION OF 42 U.S.C. § 1981

Plaintiff's third claim for relief alleges that defendants have engaged in a pattern and practice of denying equal employment opportunity to whites generally and to plaintiffs in particular, in violation of 42 U.S.C. § 1981. This allegation is supported by the enumeration of a series of incidents over the three year period prior to the filing of the complaint. Joint Statement ¶¶ 26A–J.

### A. Statute of Limitations

■ The state's personal injury statute of limitations governs actions under section 1981. *Goodman v. Lukens Steel Co.,* 482 U.S. 656, 107 S.Ct. 2617, 96 L.Ed.2d 572 (1987). In California, that statute is one year. *Harrison v. County of Alameda,* 720 F.Supp. 783, 787 (N.D.Cal.1989). Thus, any alleged violations occurring more than one year prior to November 21, 1989, the date of the original state court filing, are time-barred.

■ Plaintiffs' recitation of incidents involving alleged discrimination in Department disciplinary and administrative procedures specified in paragraphs 26A, 26B, 26C, 26D, 26E (plaintiffs do not allege specific incidents of preferential treatment in the recruitment program after November 20, 1988), 26F (plaintiffs do not allege that the failure to discipline occurred after November 20, 1988), 26G, 29H (plaintiffs do not allege that the unnamed black firefighter took an examination in civilian dress after November 20, 1988) and 26I (plaintiffs do not allege that their observation of "poorly trained" minority probationary firefighters took place after November 20, 1988) are not alleged to have occurred within the applicable statute of limitations and are therefore barred.

The cause of action for violation of section 1981 with respect to these alleged incidents is therefore DISMISSED.

### B. Allegations of Continuing Violation

■ Plaintiffs apparently seek to evade the statute of limitations with respect to claims concerning the June 1988 promotions and events prior to November 21, 1988, under a "continuing violation" theory. They seek to challenge the June 1988 promotions by arguing that their non-promotion was "because of intentional racial discrimination against them which commenced in May 1988 and continues to this date[,]" Pl.Opp. at 10; that "the racial discrimination preventing them from new employment as H–20 lieutenants is due to administration of the Fire Commission and the San Francisco Fire Department[,]" *id.;* and that "[t]he conduct complained of began in 1988 and continues to this date so as to eliminate a limitation of action by statute." *Id.* at 18.

In *Lorance v. A.T. & T. Technologies, Inc.,* 490 U.S. 900, 109 S.Ct. 2261, 104 L.Ed.2d 961 (1989), the Court decisively rejected the application of a "continuing violation" theory to permit an employee's suit based upon the acts involved in the *implementation* of a seniority system rather than upon adoption of the seniority system itself. *Id.* 109 S.Ct. at 2265–69. The Court rejected the proposition that the adoption of a seniority system permits a given plaintiff to "sue successively [in 1983, 1993, 2203, or beyond] for not being promoted, for being demoted, for being laid off, and for not being awarded a sufficiently favorable pension, so long as these acts—even if nondiscriminatory in themselves—could be attributed to the 1979 change in seniority." *Id.* 109 S.Ct. at 2269; *see also Kuemmerlein v. Madison Metro. School Dist.,* 894 F.2d 257, 259 (7th Cir. 1990) (statute of limitations in employment discrimination action runs from date of notice, not from date of actual termination).

■ However, the "continuing violation" theory will permit a claim based on otherwise time-barred events where the plaintiff

can prove that he did not know or have reason to know that the earlier actions were discriminatory. *See Kuemmerlein,* 894 F.2d at 261. This exception clearly does not apply here. When the June 1988 promotions occurred, plaintiffs knew that those promotions were pursuant to the consent decree to which they had objected and which their union had not signed. They knew that there had been mandatory promotions of minority firefighters, and they knew that they were not among the additional promotions permitted by the consent decree.

Because plaintiffs have asserted no *continuing* acts of discrimination related to the June 1988 promotions, the court finds that no claim of "continuing violation" has been properly alleged.

### C. Scope of Claims Under 42 U.S.C. § 1981

■ The Supreme Court has recently held that section 1981's contract provisions protect against racial discrimination only with respect to (1) the making of contracts and (2) the enforcement of contracts through legal process. "Where an alleged act of discrimination does not involve the impairment of one of these specific rights, § 1981 provides no relief. Section 1981 cannot be construed as a general proscription of racial discrimination in all aspects of contract relations...." *Patterson,* 491 U.S. at ——, 109 S.Ct. at 2372 (racial harassment claim relates to terms and conditions of employment and therefore concerns post-formation conduct beyond scope of section 1981).

1. *Making of contracts.* Plaintiffs do not allege that they were discriminated against in the hiring process. However, they do allege that they were illegally denied promotions to the rank of lieutenant on the basis of race. In *Patterson,* the Court held that a claim of racially discriminatory promotion may fall within the protections of section 1981 only if the promotion represents "a change in position ... such that it involved the opportunity to enter into a new contract with the employer.... Only where the promotion rises to the level of an opportunity for a new and distinct relation between the employee and the employer is such a claim actionable under § 1981." *Id.* 109 S.Ct. at 2377.

Plaintiffs argue that promotion from H2 firefighter to H20 lieutenant represents the requisite qualitative change in the nature of plaintiffs' contract relations with the Department, since the rank of lieutenant has separate examination requirements, qualifications and responsibilities. Plaintiffs further contend that defendants illegally prevented them from entering into such a relationship.

The Court in *Patterson* cautioned that the "new and distinct relationship" test is to be narrowly construed. 491 U.S. at ——, 109 S.Ct. at 2377. Courts have treated this test as raising questions of fact to be decided in light of the particular promotion at issue. *Malhotra v. Cotter & Co.,* 885 F.2d 1305, 1311–12 (7th Cir.1989) (remanding to district court for findings on effect of promotion on contractual relationship between employee and employer); *Rodriguez v. General Motors Corp.,* 904 F.2d 531 (9th Cir.1990) (parties should have opportunity to introduce evidence on question whether promotion represented substantial new opportunity).

A consistent body of law has not yet developed on the nature and extent of the change in employment sufficient to satisfy *Patterson*'s "new and distinct relationship" test, and no "bright line" has been articulated clearly. The Court in *Patterson* cited the promotion within a law firm from associate to partner as an example of a sufficient change in relationship, 491 U.S. at ——, 109 S.Ct. at 2377, suggesting that a substantial change in status is required for a section 1981 action. However, other courts have found a discriminatory failure to promote where the change in relationship is not as substantial. *See, e.g., Mallory v. Booth Refrigeration Supply Co.,* 882 F.2d 908, 910 (4th Cir.1989) (failure to promote from clerk to supervisor actionable under section 1981).

The court believes that there may be a question of fact as to whether the promotion from H2 firefighter to H20 lieuten-

ant satisfies the *Patterson* test. The challenged promotions were not "routine advancements," nor were they merely increases in pay. *Cf. Malhotra*, 885 F.2d 1305, 1311 (in-grade routine federal promotion not litigable under section 1981); *Williams v. National Railroad Passenger Corp.*, 716 F.Supp. 49, 51 (D.D.C.1989) (promotion providing only for pay increase does not create new and distinct relationship), *aff'd*, 901 F.2d 1131 (D.C.Cir.1990). H2 firefighters are required to apply for promotion and undergo examination, and the application process is highly competitive. Although H2 and H20 are both civil service ranks, and all promotions to the rank of H20 lieutenant are from among the Department's existing H2 firefighters, Joint Statement ¶ 30, the H20 rank has separate physical and experiential qualifications.

However, the court need not reach the issue whether alleged discrimination in promotion from H2 firefighter to H20 lieutenant is cognizable as an impairment of plaintiffs' rights in the making of contracts, because plaintiffs' claim under this provision of section 1981 is barred by the statute of limitations. *See above* at section II.A.

■ 2. *Enforcement of contracts through legal process.* Plaintiffs additionally argue that defendants have interfered with their rights to enforce their contracts through legal process. None of the claims in the Amended Complaint even hint at what such interference might have involved. In their brief in opposition to summary judgment, however, plaintiffs raise for the first time the claim that defendants, by arguing that plaintiffs are estopped from challenging the validity of the consent decree, are seeking to frustrate plaintiffs' right to judicial access under section 1981.

The suggestion that a defendant's good faith motion for summary judgment on the ground of collateral estoppel should constitute a *per se* violation of section 1981 is so illogical as to defy analysis. This probably accounts for the absence of authority and, indeed, plaintiffs cite none. The court will not use its time to consider this absurd argument any further.

Plaintiffs make a final effort at asserting liability under section 1981, making another argument that appears nowhere in the Amended Complaint but is raised for the first time in plaintiffs' Opposition Brief. They cite the "strident tone" of the Monitor's Tenth Report and Fourteenth Report as evidence of a hostile climate which "operate[s] to frustrate plaintiffs from creating a new contractual relationship with the Fire Department[,]" and accuse the Monitor of being an "arbiter of crucial perceptual issues which serve to intimidate plaintiffs and other white male applicants from seeking promotion." Pl.Opp. to MSJ at 16–17. The Monitor, however, is not a defendant in this action, and the court fails to see any ground for a claim under section 1981 on the basis of such unfocused, mushy allegations.

Because 1) plaintiffs' section 1981 claim challenging the June 1988 promotions is time-barred; 2) the doctrine of "continuing violation" is inapplicable to evade the effect of the statute of limitations; 3) and the remaining claims do not state a cause of action for interference with plaintiffs' rights to enter into or to enforce contracts, plaintiffs' cause of action under section 1981 is DISMISSED.

## III. CLAIM FOR VIOLATION OF 42 U.S.C. § 1983

Section 1983 of the Civil Rights Act prohibits deprivation of any right guaranteed by the fourteenth amendment to the United States under color of state law. A plaintiff alleging denial of equal protection must prove purposeful discrimination by demonstrating that he "receiv[ed] different treatment from that received by other individuals similarly situated," *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1478 (3d Cir. 1990) (quoting *Kuhar v. Greensburg–Salem School Dist.*, 616 F.2d 676, 677 n. 1 (3d Cir.1980)), and that the treatment complained of was under color of state law. *West v. Atkins*, 487 U.S. 42, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988).

Plaintiffs' fourth claim for relief alleges that instances of conduct from February 1988 to November 1989, including the fail-

ure to promote plaintiffs in June 1988, constitute a pattern and practice of discrimination by defendants acting under color of state law. Amended Complaint at 8–10.

### A. *Statute of Limitations*

■ In California, the statute of limitations for claims brought under 42 U.S.C. § 1983 is one year. *Harrison v. County of Alameda*, 720 F.Supp. 783 (N.D.Cal.1989). Thus, any alleged violations occurring more than one year prior to November 21, 1989, the date of the original state court filing, are time-barred.

At the hearing on July 11, 1990, the court specifically gave plaintiffs ten days to redraft the original complaint with respect to its claims under section 1983 to make specific allegations of particular adverse actions; the court further instructed that the events "[must] have occurred within that one year period." Transcript at 22–23. In their Amended Complaint, redrafted in response to the July 11 hearing, plaintiffs' recitation of alleged acts of discrimination in Department promotions and disciplinary and administrative procedures includes many instances of conduct prior to November 21, 1988 and instances of conduct that are not specifically alleged to have occurred within the applicable statute of limitations. *See* Amended Complaint ¶¶ 26A, 26B, 26C, 26D, 26E, 26F, 26G, 26H, 26I.

Thus, plaintiffs' cause of action for violation of section 1983 with respect to the acts described in the cited paragraphs is DISMISSED.

### B. *Claim of Continuing Violation*

*See above* Section II.B.

### C. *Collateral Estoppel*

■ Plaintiffs are also collaterally estopped from asserting a claim of denial of equal protection under section 1983 arising from implementation of the consent decree, and specifically arising from the June 1988 promotions. Here, as with plaintiffs' claim under FEHA, California Government Code §§ 12900–12996, the issue of the constitutionality of the mandatory promotions, in-

cluding their effect on non-minority firefighters, has been fully and finally litigated in a prior action by a party who adequately represented the interests of the plaintiffs in this suit. *See above* Section I.B. Therefore, plaintiffs' cause of action for violation of section 1983 with respect to actions involved in the implementation of the consent decree is DISMISSED.

### D. *Remaining Claims Under Section 1983*

■ In order to establish requisite standing under Article III, plaintiffs must "show that [they] personally [have] suffered some actual or threatened injury as a result of the putatively illegal conduct" of defendants. *Diamond v. Charles*, 476 U.S. 54, 62, 106 S.Ct. 1697, 1703, 90 L.Ed.2d 48 (1986) (quoting *Gladstone, Realtors v. Village of Bellwood*, 441 U.S. 91, 99, 99 S.Ct. 1601, 1607, 60 L.Ed.2d 66 (1979)). Plaintiffs must demonstrate a "direct stake in the outcome" of the litigation. *Id.* (quoting *Sierra Club v. Morton*, 405 U.S. 727, 740, 92 S.Ct. 1361, 1369, 31 L.Ed.2d 636 (1972)).

With respect to the remaining incidents alleged to have occurred within the applicable statute of limitations, Amended Complaint ¶¶ 28–33, the court finds that plaintiffs have failed to allege sufficient personal knowledge or any cognizable injury sufficient to state a claim under section 1983.

1. *Plaintiff Hentz.* Plaintiff James Hentz does not claim personal knowledge or involvement in any of the incidents alleged in the complaint, specifically the incidents alleged in Amended Complaint paragraphs 28–33, with the exception of the June 1988 promotions (challenge to which is time-barred, as discussed above). He has alleged no personal harm arising from those incidents; he has not alleged that he has been treated in a manner different from others similarly situated. Joint Statement ¶¶ 66–71.

2. *Plaintiff O'Shea.* Plaintiff John O'Shea does not claim personal knowledge or involvement in any of the incidents alleged in the Amended Complaint with the exception of the June 1988 promotions

(challenge to which is time-barred, as discussed above), and the incident described in paragraph 28 of the complaint. Mr. O'Shea alleges that some time in 1989, defendants refused to take action pursuant to allegations by plaintiff O'Shea that Captain William Long of the Department had violated fire department regulations. Plaintiffs assert that this refusal was in retaliation for Mr. O'Shea's involvement as a party in the present litigation. Although Mr. O'Shea believes that Captain Long filed a false police report against him, he has never seen the police report, nor does he allege indirect knowledge of its contents. In addition, no disciplinary action was taken against Mr. O'Shea as a result of the police report. With respect to all other claims, Plaintiff O'Shea has alleged no personal injury; nor has he alleged that he has been treated in a manner different from others similarly situated. Joint Statement ¶¶ 167–171.

3. *Plaintiff Papera.* Plaintiff Michael Papera does not claim personal knowledge or involvement in any of the incidents alleged in the complaint, specifically the incidents alleged in paragraphs 29–33, with the exception of the June 1988 promotions. He has alleged no personal injury arising from those incidents; he has not alleged that he has been treated in a manner different from others similarly situated. Joint Statement ¶¶ 44–60.

4. *Plaintiff Plescia.* Plaintiff Matthew Plescia does not claim personal knowledge or involvement in any of the incidents alleged in the complaint, specifically the incidents alleged in paragraphs 29–33, with the exception of the June 1988 promotions. He has alleged no personal injury arising from those incidents; he has not alleged that he has been treated in a manner different from others similarly situated. Joint Statement ¶¶ 147–162.

5. *Plaintiff Skain.* Plaintiff Patrick Skain's knowledge and involvement is identical to that of plaintiffs Papera and Plescia, Joint Statement ¶¶ 128–144, with the exception of an incident in which Mr. Skain observed an automobile accident involving an African–American lieutenant in the De-partment. The lieutenant was wearing a partial Department uniform at the time, and an open container of alcoholic beverage was found in the car. Plaintiffs allege that no investigation was ordered beyond the initial police report. However, plaintiff Skain has alleged no cognizable injury arising from this incident; nor has he alleged that he has been treated in a manner different from others similarly situated. Joint Statement ¶¶ 124–144.

6. *Plaintiff Sullivan.* Plaintiff Daniel Sullivan's knowledge and involvement is identical to that of plaintiffs Papera and Plescia. Joint Statement ¶¶ 86–101.

7. *Plaintiff Van Pool.* Plaintiff Ronald Van Pool's knowledge and involvement is identical to that of plaintiffs Papera and Plescia. Joint Statement ¶¶ 104–123. Mr. Van Pool appears to have omitted from the Amended Complaint his allegation that he was the victim of racial discrimination in an off-duty incident in which an African–American member of the Department called him "Spot," apparently because of the freckles on his body. *Id.* at ¶¶ 104–105.

Because 1) plaintiffs' section 1983 claim challenging the June 1988 promotions is collaterally estopped; 2) there has been no showing of a continuing pattern or practice sufficient to prevent the claim from being time-barred with respect to all actions prior to November 21, 1988; and 3) with respect to events and actions within the statute of limitations, plaintiffs have failed to allege personal knowledge or cognizable injury, plaintiffs' cause of action under section 1983 is DISMISSED.

## IV. CLAIM FOR VIOLATION OF CALIFORNIA CONSTITUTION ARTICLE I, SECTION 8

Article I, § 8 of the California Constitution provides that "[a] person may not be disqualified from entering or pursuing a business, profession, vocation, or employment because of sex, race, creed, color, or national or ethnic origin."

Plaintiffs allege that through all of the actions enumerated in the complaint, defendants have violated plaintiffs' rights to be free from employment discrimination under

section 8. In addition, they seek attorneys' fees under California Code of Civil Procedure § 1021.5 and Government Code § 800.

### A. *Collateral Estoppel*

 Plaintiffs concede that the language of prohibited discrimination under section 8 parallels the equal protection clause of the fourteenth amendment to the United States Constitution. In the *Davis II* litigation, the legality of the consent decree, and in particular of the mandatory promotions pursuant to paragraph 16, was upheld against federal equal protection challenges under a standard of strict scrutiny. Consistent with the discussion above, plaintiffs are collaterally estopped from challenging any deprivations of equal employment opportunity arising from implementation of the consent decree.

Moreover, as above, challenges to the June 1988 promotions are time-barred by the statute of limitations governing actions for personal injury.

Plaintiffs seek to avoid the effects of collateral estoppel by arguing that although section 8 mirrors the protection provided by the fourteenth amendment, "it provides separate state protections for citizens of *California.*" Pl.Opp. at 18 (emphasis in original). This distinction is irrelevant for the purposes of issue preclusion. The plaintiffs in this suit, as white males who were denied promotions to the rank of lieutenant in June 1988, have already had their rights to equal protection asserted by Local 798 and considered by this court and by the Ninth Circuit. There are no broader rights accorded by section 8 which require that the court revisit the issue of the legality of the consent decree or the implementation of paragraph 16.

### B. *Pre-emption by FEHA*

 Even if this claim were not barred by collateral estoppel, it would be preempted. Plaintiffs' factual allegations under section 8 are the same as those contained in their claim under FEHA. However, the California Court of Appeal has stated that "FEHA prohibitions on employment discrimination are not a codification of preex-

isting common law doctrine," and that even if a common law cause of action existed before a cause of action was identified in FEHA as an unlawful employment practice, "the Legislature has made clear its intent to 'occupy the field of regulation of discrimination in employment' by virtue of the FEHA." *Ficalora v. Lockheed Corp.,* 193 Cal.App.3d 489, 492, 238 Cal.Rptr. 360 (1987) (holding that employee's sole cause of action for retaliatory discharge is statutory). Plaintiffs' state cause of action for employment discrimination is therefore governed by FEHA and the requirement of administrative exhaustion.

### C. *Remaining Claims*

As to allegations of actions and events not barred by the statute of limitations, they exceed the "scope of the charge" of the FEHA complaint, *see above* at Section I.C., and will not be addressed by the court for failure to exhaust administrative remedies.

### CONCLUSION

Plaintiffs clearly have felt continually aggrieved by the implementation of the consent decree approved in May 1988, and by the June 1988 promotions that it mandated. They seek by this action to reopen and relitigate the issue of the legality of the decree with respect to non-minority firefighters, an issue vigorously and fully litigated on their behalf by Local 798, and finally decided by this court and by the Ninth Circuit. The court finds that relevant statutes of limitations, the doctrine of collateral estoppel, rules of pleading, requirements of standing, and the facts, which plaintiffs themselves concede, preclude this action.

Defendants' and defendant-intervenors' motion for summary judgment as to all causes of action is therefore GRANTED.

IT IS SO ORDERED.