Steven **OUBICHON**, Appellant,

v.

**NORTH AMERICAN ROCKWELL CORPORATION**, Appellee.

No. 71-1540.

United States Court of Appeals, Ninth Circuit.

July 10, 1973.

Hillel Chodos (argued), Los Angeles, Cal., for appellant.

Kenneth W. Anderson (argued), Stephen E. Tallent, J. Anthony Sinclitico, III, of Gibson, Dunn & Crutcher, Los Angeles, Cal., for appellee.

Charles L. Reischel (argued), John De J. Pemberton, Jr., Acting Gen. Counsel, Julia P. Cooper, Atty., Barbara Schlei, Legal Consultant, E. E. O. C., Washington, D. C., for amicus curiae.

Before CHAMBERS, HAMLEY and GOODWIN, Circuit Judges.

ALFRED T. GOODWIN, Circuit Judge:

Steven Oubichon appeals from a judgment of dismissal of a part of his complaint and a summary judgment against the remainder in an action for damages and injunctive relief under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e.

Oubichon, a black employee of North American Rockwell Corporation, alleged four acts of racial discrimination: (1) disciplinary suspension for marching in a C.O.R.E.-sponsored demonstration against North American on September 13, 1966; (2) exclusion from on-the-job training classes that started on March 27, 1967; (3) disciplinary action for a purportedly unauthorized entry upon company property on May 3, 1967; and (4) an interdepartmental transfer on June 13, 1967.

On March 21, 1967, after the first alleged incident, Oubichon filed an unsworn complaint with the Equal Employment Opportunity Commission (EEOC). The Commission referred him to the California Fair Employment Practices Commission (FEPC) to enable him to comply with § 706(b) of the Act, 42 U. S.C. § 2000e–5(b). The state agency rejected Oubichon's complaint because it had previously found similar complaints by other C.O.R.E. demonstrators "not sustained."

Oubichon then made a timely request for the EEOC to take jurisdiction, and filed a sworn charge alleging all four incidents. While Oubichon's case was being studied by the EEOC, Oubichon's union filed, under a collective-bargaining agreement, grievances based on the first two alleged incidents. North American settled these grievances without admitting discrimination. North American paid Oubichon his lost wages, and removed from his file the evidence of disciplinary measures.

In due course, the EEOC reported that it had been unable to obtain "voluntary compliance" from North American, thus clearing the way for Oubichon to commence this action in the district court. North American moved to dismiss all portions of the complaint except those relating to the first incident.

North American contended that because only the one matter had been

brought before the state agency the court lacked subject matter jurisdiction over all but the allegations concerning the C.O.R.E. protest. With respect to that incident, North American sought summary judgment on the ground that the grievance proceedings constituted an election of remedies that barred a Title VII action and rendered the case moot.

In a decision reported at 325 F.Supp. 1033 (C.D.Cal.1970), the district court granted both motions. Oubichon appeals. We reverse.

## I

The dismissal was predicated on Oubichon's alleged failure to comply with § 706(b) of the Act. The purpose of § 706(b) is to give state agencies an opportunity to consider discrimination complaints before federal authorities act. By contacting the California FEPC, Oubichon brought his complaint about the disciplinary action taken against the 1966 protestors within the requirement of § 706(b). Love v. Pullman Co., 404 U.S. 522, 92 S.Ct. 616, 30 L.Ed.2d 679 (1972). North American contends, however, that this single notification of the FEPC did not afford that agency an adequate opportunity to evaluate Oubichon's complaints of later incidents.

When an employee seeks judicial relief for incidents not listed in his original charge to the EEOC, the judicial complaint nevertheless may encompass any discrimination like or reasonably related to the allegations of the EEOC charge, including new acts occurring during the pendency of the charge before the EEOC. *See* Danner v. Phillips Petroleum Co., 447 F.2d 159, 162 (5th Cir. 1971); Tipler v. E. I. duPont deNemours & Co., 443 F.2d 125, 131 (6th Cir. 1971); Sanchez v. Standard Brands, Inc., 431 F.2d 455, 465–467 (5th Cir. 1970); Taylor v. Safeway Stores, Inc., 333 F.Supp. 83 (D.Colo.1971); Garneau v. Raytheon Co., 323 F.Supp. 391, 393–394 (D.Mass.1971); Sciaraffa v. Oxford Paper Co., 310 F.Supp. 891,

898 (D.Me.1970); Logan v. General Fireproofing Co., 309 F.Supp. 1096, 1100 (S.D.N.C.1969); King v. Georgia Power Co., 295 F.Supp. 943, 947 (N.D. Ga.1968); Note, Developments in the Law–Employment Discrimination and Title VII of the Civil Rights Acts of 1964, 84 Harv.L.Rev. 1109, 1216–18 (1971); *cf.* Macklin v. Spector Freight Systems, Inc., 478 F.2d 979 (D.C.Cir. 1973). The same standard should govern when the charge is first filed with a state agency. *Cf.* Latino v. Rainbo Bakers, Inc., 358 F.Supp. 869 (D.Colo. 1973). To force an employee to return to the state agency every time he claims a new instance of discrimination in order to have the EEOC and the courts consider the subsequent incidents along with the original ones would erect a needless procedural barrier. *Cf.* Love v. Pullman Co., 404 U.S. at 527, 92 S.Ct. 616.

As the present case shows, it is not always clear whether later incidents are reasonably related to or grow out of earlier incidents on which complaint is made. Oubichon now characterizes all his allegations as describing a chain of related actions designed to punish him for offending his employer. North American, on the other hand, asserts that each occurrence is separate. It cannot be said as a matter of law that North American's interpretation of the facts is the only acceptable one. A trial is necessary to resolve this dispute, and it follows that the district court erred in granting North American's motion to dismiss.

Furthermore, even if Oubichon's procedure had failed to satisfy § 706(b), dismissal was unwarranted. In cases where the state agency has been bypassed, the district court should retain jurisdiction for a period sufficient to allow the employee to seek redress through the state agency. Mitchell v. Mid-Continent Spring Co., 466 F.2d 24 (6th Cir. 1972), cert. denied, 410 U.S. 928, 93 S.Ct. 1363, 35 L.Ed.2d 590 (1972); Motorola, Inc. v. EEOC, 460 F. 2d 1245 (9th Cir. 1972).

## II

The district court granted summary judgment on two grounds: North American's theory that the removal of the warning notice from Oubichon's file and the payment of the five days' salary he was docked rendered his claim moot; Oubichon's resort to union grievance machinery was an election of remedies barring recourse to the courts. Both theories were wrong.

■ The portion of the case pertaining to the C.O.R.E. protest is not made moot by the relief Oubichon received in the union grievance procedure. Oubichon claims that the disciplinary action taken against him for demonstrating is part of a chain of incidents indicative of a policy of racial discrimination. If he can prove this allegation, he may be entitled to injunctive relief from future manifestations of the alleged policy as well as money damages for past injuries. The controversy is justiciable, and Oubichon has the requisite personal stake in attempting to prove his allegations. If he succeeds, an injunction is possible. The case is not moot. *See* generally Note, Policy Conflict: Should an Arbitration Award Be Allowed to Bar a Suit Under Title VII of the Civil Rights Act of 1964?, 20 U.S.L.A.L.Rev. 84, 94–97 (1972); *cf.* Rosenfeld v. Southern Pacific Co., 444 F.2d 1219, 1221–1222 (9th Cir. 1971).

The election-of-remedies issue is more complex. While it is generally agreed that double recovery is to be avoided, most courts and commentators have rejected the stringent view adopted by the district court here. *See, e.g.,* Macklin v. Spector Freight Systems, Inc., *supra;* Rios v. Reynolds Metals Co., 467 F.2d 54 (5th Cir. 1972); Voutsis v. Union Carbide Corp., 452 F.2d 889 (2d Cir. 1971); Newman v. Avco Corp., 451 F.2d 743 (6th Cir. 1971); Bowe v. Colgate-Palmolive Co., 416 F.2d 711 (7th Cir. 1969); Meltzer, Labor Arbitration and Overlapping and Conflicting Remedies for Employment Discrimination, 39 U. Chi.L.Rev. 30 (1971); Note, Dewey v.

Reynolds Metals Company: Labor Arbitration and Title VII, 119 U.Pa.L.Rev. 684 (1971); Note, Developments in the Law, *supra* at 1222–1228. *But see* Alexander v. Gardner-Denver Co., 466 F.2d 1209 (10th Cir. 1972), aff'g 346 F.Supp. 1012 (D.Colo.1971), cert. granted, 410 U.S. 925, 93 S.Ct. 1398, 35 L.Ed.2d 586 (1973).

This circuit has recently observed that "[t]here is no jurisdictional bar to invoking Title VII remedies and the arbitration process independently." Griffin v. Pacific Martime Ass'n, 478 F.2d 1118 (9th Cir. 1973). And in Rosenfeld v. Southern Pacific Co., *supra,* aff'g 293 F.Supp. 1219 (C.D.Cal.1968), we upheld a decision of the district court that denied that the election-of-remedies doctrine barred a judicial action where the employee abandoned the grievance procedures before a final decision was reached.

Title VII is silent on the need to exhaust contractual remedies or the effect of resort to union grievance procedures. On the other hand, the statute is very clear in spelling out the administrative prerequisites to suit and in specifying the implications of pursuit of administrative remedies on the right to judicial relief. *See, e. g.,* Crosslin v. Mountain States Tel. & Tel. Co., 422 F.2d 1028 (9th Cir. 1970), vacated, 400 U.S. 1004, 91 S.Ct. 562, 27 L.Ed.2d 618 (1971). The inference is strong that Congress did not intend to deny Title VII relief to employees who availed themselves of contractual remedies before coming to the courts. *Cf.* Voutsis v. Union Carbide Corp., 452 F.2d at 893–894; Meltzer, *supra* at 44.

This statutory construction is fortified by an examination of the policies underlying the election-of-remedies doctrine, Title VII, and federal labor law. Strictly speaking, the doctrine of election of remedies is not applicable in this context, for, as the Court of Appeals for the Sixth Circuit noted, "[t]he doctrine applies only where conflicting and inconsistent remedies are sought on the basis of conflicting and inconsistent rights."

Newman v. Avco Corp., 451 F.2d at 746 n. 1. *See* Note, Labor Arbitration and Title VII, *supra* at 685–86; Note, Policy Conflict, *supra* at 90–93.

But other concerns that are not necessarily part of the general election-of-remedies doctrine have been voiced. First, proponents of a strict election doctrine have pointed to the possibility of unjust enrichment by multiple recoveries. *See e. g.,* Bowe v. Colgate-Palmolive Co., 416 F.2d at 715. This fear cannot justify a stringent election requirement. If the employer prevails at arbitration, then no duplication would be possible. Even where the employee receives an award or a settlement as in the present case, judicial relief can be tailored to avoid duplication and windfall gains. *See, e.g.,* Hutchings v. United States Industries, Inc., 428 F.2d 303, 314 (5th Cir. 1970); Bowe v. Colgate-Palmolive Co., *supra*; Note, Labor Arbitration and Title VII, *supra* at 695.

Second, it has been said that it would be unfair to permit the employee to overturn or even supplement arbitration awards or grievance settlements when the employer cannot do so. *See, e. g.,* Alexander v. Gardner-Denver Co., 346 F. Supp. at 1019. However, to hold the employee to the result of the grievance proceedings might prove equally unfair. It is natural for a union member to lodge a grievance against his employer when he feels he has one. Note, Developments in the Law, *supra* at 1223. Indeed, bargaining agreements often make employees resort by grievance machinery mandatory. Yet, under Vaca v. Sipes, 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967), the union—not the employee—has wide control over the settlement and processing of employee grievances. The union's presentation of the case and selection of an arbitrator may seem unsatisfactory to the employee, but the bargaining agreement nonetheless binds him by the outcome. Further, the interests of unions and of management in arbitration are not always adversary. *See, e. g.,* Meltzer, *supra* at 44; Attleson, Disciplinary Discharges, Arbitration,

and NLRB Deference, 20 Buffalo L.Rev. 355, 364, 377 (1971); Note, Policy Conflict, *supra* at 124–27. This conflict-of-interest problem is accentuated where, as in the instant case, both union and employer are accused by the grievant as coconspirators in racial discrimination. *See* Macklin v. Spector Freight Systems, Inc., 478 F.2d at 991–92.

Holding the employee to the union's presentation of his grievance may also be unfair in view of other institutional deficiencies in using grievance procedures to adjudicate discrimination claims. Often, when the case proceeds to arbitration the arbitrator perceives his role as circumscribed by the narrow grant of authority given him by the private contracting parties, and he may not regard himself as competent to resolve complex issues of public law. Gould, Judicial Review of Employment Discrimination Arbitrations, in Labor Arbitration at the Quarter-Century Mark: Proceedings of the Twenty-fifth Annual Meeting of the National Academy of Arbitrators, 114, 133–34, 137 (1972); Note, Policy Conflict, *supra* at 132–33. Contractual provisions may differ significantly from Title VII, and the available remedies will generally vary. *See* Hutchings v. United States Industries, Inc., 428 F.2d at 311–313; Bowe v. Colgate-Palmolive. Co., 416 F.2d at 715.

Moreover, to the degree that the procedure is, on balance, less fair to the employer, the imbalance follows from the fact that the employer cannot, under Title VII, be the victim of discrimination by an employee. *See* Note, Labor Arbitration and Title VII, *supra* at 692.

We recognize that if a workman is free to seek Title VII relief after arbitration, management may have to defend itself in two tribunals. Nonetheless, Congress presumably enacted Title VII, at least in part, because grievance-arbitration machinery had proved inadequate to protect employees from racial discrimination. Gould, Labor Arbitration of Grievances Involving Racial Discrimination, 118 U.Pa.L.Rev. 40, 55

(1969). If Congress intended Title VII to create a right and provide a remedy, it must have considered that a national policy of eliminating job discrimination is worth the incidental inconvenience to the employer.

The inconvenience is hardly overwhelming. The jurisdiction of the NLRB to hear unfair labor practice charges arising from incidents concurrently the subject of grievance arbitration is equally burdensome to employers, but this has not caused the courts to say that the employer need not defend himself before both tribunals. *See* Bowe v. Colgate-Palmolive Co., 416 F.2d at 714; Note, Labor Arbitration and Title VII, *supra* at 692; *cf.* Hutchings v. United States Industries, Inc., 428 F.2d at 313 n. 9. *Contra,* Dewey v. Reynolds Metals Co., 429 F.2d 324, 332 (6th Cir. 1970), aff'd by an equally divided Court, 402 U.S. 689, 91 S.Ct. 2186, 29 L.Ed.2d 267 (1971).

The third reason invoked to deny judicial relief to an employee who has pursued grievance procedures is a belief that access to the courts after arbitration discourages arbitration and private settlement. *See, e.g.,* Alexander v. Gardner-Denver Co., *supra*; Dewey v. Reynolds Metals Co., *supra*. Inasmuch as contract grievance processes have not been conspicuously successful in ending racial discrimination, however, this prediction, even if true, misses the point of the legislative purpose behind Title VII. Moreover, the opposite policy could also discourage arbitration, since employees, through their representatives, might decide to dispense with arbitration and go to the EEOC and the courts immediately if resort to arbitration were to preclude judicial relief. Note, Labor Arbitration and Title VII, *supra* at 694. Finally, it is doubtful that employers will reject arbitration clauses if employees can seek subsequent judicial relief. *See* Gould, Judicial Review of Employment Discrimination Arbitration, *supra* at 129–130; Note, Labor Arbitration and Title VII, *supra* at 693.

The most persuasive reason advanced to bar Title VII recovery to an employee who has accepted an arbitration award is the principle of estoppel. As a general proposition, parties who have freely agreed to submit their grievance to a fair and impartial tribunal having the power to decide should not seek another decision elsewhere on the same facts. Newman v. Avco Corp., 451 F.2d at 747. But Title VII cases do not lend themselves to solution by general propositions.

■■ The purposes of Title VII and the federal labor policy of encouraging arbitration can both be served by a rule that an employee can seek more than one remedy but may not recover twice for the same injury. Whether or not the grievance arbitration procedure has run its course, and whether or not an employee has accepted an out-of-court award or settlement, he is not barred from all Title VII relief. If a class action is proper, he may seek relief for the class he represents. If he is suing on his own behalf, he may seek such individual relief as Title VII makes available.

However, a grievant's acceptance of an arbitration award or settlement is prima facie evidence that he has received full compensation for his individual damages. After an employee accepts an out-of-court settlement for a grievance arising out of a civil rights claim, he will have the burden of proving that what he received was not intended to be a complete settlement of his claim for money damages. If he can prove that the apparent settlement was not based on the full range of issues cognizable under Title VII, or that it was accepted only as a partial settlement because the grievance arbitration machinery was limited in its available remedies, the plaintiff may press for additional money damages. But payments accepted by a grievant in any event constitute a *pro tanto* satisfaction of his damage claim. With the foregoing safeguard, the sup-

posed evils of judicial relief after arbitration largely evaporate.

The case at bar must be remanded for consideration of all the incidents alleged to be illegal acts of racial discrimination, the extent of damages, if any, and the propriety of injunctive relief.

Reversed and remanded.