[No. H011422. Sixth Dist. July 21, 1995.]

CHARLES OKOLI, Plaintiff and Respondent, v.
LOCKHEED TECHNICAL OPERATIONS COMPANY, Defendant and
Appellant.

---

**COUNSEL**

Sheppard, Mullin, Richter & Hampton, John C. Cook, Daniel P. Westman, Felicia R. Reid, Paul H. Adams and Angela M. Nolan for Defendant and Appellant.

William N. Woodson III and Thomas E. Kotoske for Plaintiff and Respondent.

## OPINION

**COTTLE, P. J.**—Charles Okoli filed a charge of discrimination against his employer, Lockheed Technical Operations Company (Lockheed), with the California Department of Fair Employment and Housing (DFEH). The charge alleged that Okoli's supervisor had denied him a promotion based on Okoli's race and national origin and had made derogatory comments to him. While DFEH was investigating the charge, Lockheed allegedly subjected Okoli to numerous adverse employment actions in retaliation for filing the DFEH charge. However, Okoli did not amend his DFEH charge to include these acts of retaliation; nor did he file a new charge based on retaliation. Later, after Okoli received his "right to sue" letter from DFEH, he brought the instant action against Lockheed, alleging racial and national origin discrimination, racial harassment, and retaliation. The jury rendered a defense verdict on the discrimination and harassment causes of action but found in Okoli's favor on the retaliation cause of action. On appeal, Lockheed argues[1] that Okoli's retaliation claim is barred by the exhaustion of remedies doctrine. We agree and, accordingly, reverse the judgment.

### FACTS

We relate here only the facts that are pertinent to the exhaustion of remedies issue.

Okoli filed his charge of discrimination with DFEH on May 18, 1988. In the charge he indicated the "discrimination [was] based on race" and the "most recent or continuing discrimination took place 2/10/88." When asked for "the particulars," he recounted: "I. I have been employed by Lockheed Missiles and Space Co., Technical Operations since 7-13-84. My current salary is $583.00 per week. [¶] On 2-10-88, I was denied promotion to the position of Alternate Lead Planner Analyst by Daniel Pentacost, Real Time Supervisor. During the course of my employment I was harassed, the incident occurring on 9-8-87. [¶] II. Mr. Pentacost's reasons for not promoting me were that I had a language problem and that my evaluation was poor. [¶] III. I believe that I have been denied promotion and harassed because of my Race, Black and because of my national origin, on the basis that: [¶] 1.

---

[1]Lockheed raises several additional issues on appeal. As the exhaustion of remedies defense is dispositive, however, we need not reach those other issues.

I was second in seniority and Real Time experience. I have all the qualifications for the position. [¶] 2. Another employee of my same race who was highest in seniority and Real Time experience was also denied this position. [¶] 3. A White employee who had less seniority and Real Time experience than myself was promoted to this position. [¶] 4. No minorities of the Black race have had any management positions in this department. [¶] 5. On at least two different occasions, the supervisor made derogatory comments about my national origin. Upon returning from an emergency trip from Africa, and on another occasion, Mr. Pentacost implied by his comments that I was running drugs."

DFEH investigated the claim over the next several months and in December 1988 closed its file and notified Okoli of his right to pursue civil litigation.

On June 20, 1989, Okoli filed suit against Lockheed. His complaint alleged, inter alia, causes of action for racial discrimination, racial harassment, and retaliation under the Fair Employment and Housing Act (FEHA) (Gov. Code, § 12900 et seq.).[2] Lockheed demurred, pointing to Okoli's failure "to plead sufficient facts to demonstrate that [he has] met the necessary prerequisites to suit under the FEHA." Lockheed asserted that Okoli had "not allege[d] which, if any of defendants' personnel actions [Okoli had] made the subject of a DFEH complaint . . . ."

After Okoli filed his first amended complaint, Lockheed filed a general denial and also asserted several separate affirmative defenses. Relative to this appeal is the fifth affirmative defense, which reads: "Plaintiffs' complaint cannot be maintained to the extent that it relies on alleged claims of discrimination which were not made the subject of a timely charge filed with the California Department of Fair Employment and Housing, or to the extent that plaintiffs have otherwise failed to fulfill the statutory prerequisites to suit set forth in the California Fair Employment and Housing Act. Gov't. Code § 12900 et seq."

Subsequently, Lockheed filed a motion for summary judgment, in which it argued: "On the exhaustion issue, it is undisputed that Okoli never filed a charge with the Department of Fair Employment and Housing alleging unlawful retaliation. Ex. B to Cowan Decl. Okoli's failure to exhaust his administrative remedies deprives this Court of *jurisdiction* over Okoli's cause of action for retaliation. *Yurick* v. *Superior Court* (1989) 209 Cal.App.3d 1116, 1121-22 [257 Cal.Rptr. 665]; *Rojo* v. *Kliger* (1990) 52 Cal.3d 65 [276 Cal.Rptr. 130, 801 P.2d 373]."

---

[2] All further statutory references are to the Government Code unless otherwise specified.

Once again Lockheed raised the exhaustion issue in its trial brief, pointing out that "exhaustion of administrative remedies and timely filing of a suit are prerequisites to bringing a civil action." (Capitalization omitted.) Citing *Yurick v. Superior Court* (1989) 209 Cal.App.3d 1116, 1123 [257 Cal.Rptr. 665], Lockheed argued that to permit civil actions to be based upon theories or events not subject to a charge with the DFEH " 'would undermine *vital policy interests* embodied in the FEHA, i.e., the resolution of disputes and elimination of unlawful employment practices by conciliation.' " (Italics added by Lockheed.)

At the start of trial, Lockheed repeatedly stressed in motions *in limine* that it believed Okoli's cause of action for retaliation was barred by the exhaustion of administrative remedies doctrine. When asked which of its affirmative defenses it intended to pursue at trial, counsel responded: "The three that we wish to—two conditionally hold to, and one hold to for obvious reasons. [¶] The first one is administrative remedies, failure to exhaust administrative remedies. Obviously, that's a key to *in limine* motions we're going to be arguing today. We would retain that one."

Later, counsel argued that under California Supreme Court precedents, Okoli was required to file a charge with the DFEH if he wanted to bring that same claim before the courts. Counsel stated: "That is, under *Rojo*, the scope of the charge and the obligation to file a charge with the EEOC or the DFEH. There is a charge here that talks about discrimination, discriminatory treatment, discrimination, i.e., this one job. [¶] There is no charge here, there is nothing here that talks about . . . retaliation. . . . [¶] . . . And your honor, the scope of the court's jurisdiction, under *Rojo* and under cases cited in *Rojo*, and I would direct your attention to cases cited on page 83, *Yurick v. Superior Court*, *Robinson*, *Miller* and *Myers*, go to this point, that the scope of the charge and the scope of the civil suit that follows it, is limited to what the DFEH reasonably could have or would have investigated, based on the charge that was presented to them. [¶] You can see this, you can make a decision as to whether, based on this charge, the DFEH would have reasonably investigated . . . claims of retaliation. [¶] [*Y*]*urick* is right on point for this, your honor, as well as another case, name of which is *Ficalora v. Lockheed*, which was reversed on other grounds . . . . [¶] . . . *Rojo* reverses *Ficalora* on the point that there is no common law remedy, here it is, 193 Cal.App.3d 489 [238 Cal.Rptr. 360], *Ficalora v. Lockheed Corporation*, 1987 [238 Cal.Rptr. 360]. That was reversed on the point that the DFEH is the exclusive remedy for discrimination. But in that case, and it is still good law, for the fact that if one files a charge and it is later retaliated against, their obligation is to file a new charge. They can't sue for retaliation

if they have not filed a charge of retaliation. [¶] Both *Yurick* and *Ficalora* are absolute, all fours statements of the law that you can't sue for retaliation unless you have filed a charge of retaliation. You will note on this charge, not only when you look at the charge itself, not only does it not say anything about retaliation, and I am not going to make a big deal about the fact that there is a box to check and they did not check the box, I am making a big point of that, only to say—"

Finally, in its motion for nonsuit, held out of the presence of the jury, Lockheed argued: "Submit that under the *Yurick* case and under *Rojo* v. *Clayker* [*sic*] the California Supreme Court case, that these other alleged acts of discrimination are not properly before this court. . . . As to the retaliation claim, the plaintiff again in his DFEH charge did not identify any specific act with regard to his terms and conditions of employment, that caused him monetary damage. There has been no testimony in this case regarding any act of retaliation that carried any tangible loss with it. [¶] Even if there had been some testimony, the plaintiff simply has failed to charge— excuse me, failed to file any charge of discrimination with DFEH with respect to that. There hasn't been any such testimony. [¶] Even if there were, under the *Yurick* case, retaliation is a separate theory under the DFEH as to which charge has to be filed. Plaintiff did not do so."

The motion *in limine* was apparently never ruled upon, and the motion for nonsuit was denied. Subsequently the jury came in with a verdict for Okoli on only his retaliation claim. Lockheed filed the instant appeal after its motions for new trial and/or judgment notwithstanding the verdict were denied.

## DISCUSSION

■ Lockheed contends "the trial court had no jurisdiction to hear Okoli's retaliation cause of action [as] Okoli never filed a charge with the DFEH mentioning retaliation." As we shall explain, we agree.

■ It is fundamental that ". . . where an administrative remedy is provided by statute, relief must be sought from the administrative body and this remedy exhausted before the courts will act." (*Abelleira* v. *District Court of Appeal* (1941) 17 Cal.2d 280, 292 [109 P.2d 942, 132 A.L.R. 715].) In the case of retaliatory discrimination for reporting an unlawful employment practice, an administrative remedy is provided by the FEHA.

Briefly, FEHA provides that freedom from job discrimination based on race, sex, age, and other enumerated factors, is a civil right (§ 12921). Such

discrimination is against public policy (§ 12920) and constitutes an unfair employment practice (§§ 12940, 12941). It is also an unfair employment practice to retaliate against an employee because the employee has opposed an unlawful employment practice or has filed a complaint, testified, or assisted in any proceeding involving such a practice. (§ 12940, subd. (f).) FEHA creates an administrative agency, the DFEH, whose task it is to receive, investigate and conciliate complaints of unlawful employment discrimination (§§ 12930, 12963 et seq.). If, following receipt of a complaint, the DFEH fails to resolve the case or to file an accusation against the employer within 150 days, it must notify the employee in writing of his or her right to file a civil action under the FEHA. (§ 12965, subd. (b).) This notification is commonly referred to as a "right to sue" letter.

Recently, this court explained in *Martin* v. *Lockheed Missiles & Space Co.* (1994) 29 Cal.App.4th 1718 [35 Cal.Rptr.2d 181], that in the context of the FEHA, exhaustion of the administrative remedy is a jurisdictional prerequisite to resort to the courts: "Under California law 'an employee must exhaust the . . . administrative remedy' provided by the Fair Employment and Housing Act, by filing an administrative complaint with the [DFEH] (Gov. Code, § 12960; cf. *id.* §§ 12901, 12925, subd. (b)) and obtaining the DFEH's notice of right to sue (*id.* § 12965, subd. (b)), 'before bringing suit on a cause of action under the act or seeking the relief provided therein . . . .' [Citations.]." (*Id.* at p. 1724.) We further explained that "[t]o exhaust his or her administrative remedies as to a particular act made unlawful by the Fair Employment and Housing Act, the claimant must specify *that* act in the administrative complaint, even if the complaint does specify other cognizable wrongful acts. [Citation.]" (*Ibid.*; italics added.) "[I]n the context of the Fair Employment and Housing Act," we reiterated, " '[t]he failure to exhaust an administrative remedy is a jurisdictional, not a procedural, defect' . . . ." (*Ibid.*)

In the instant case, it is undisputed that Okoli filed a charge of discrimination with the DFEH in which he alleged specific instances of discrimination based on his race and national origin. It is also undisputed that he did not file a subsequent charge based on acts of retaliation by his employer. The question on this appeal is whether he can maintain his retaliation claim in spite of his failure to enumerate that claim in his charge before the DFEH. Okoli contends he can, for two reasons.

The first reason is that "defendant never timely raised this issue in the trial court until nearly two months after the verdict was entered and well after the judgment was entered" and accordingly has waived the issue on appeal. As

our statement of facts makes clear, however, this is not the case. Lockheed raised the exhaustion issue at *every* stage of the proceedings: in its demurrers, its answers, its summary judgment motions, its trial brief, its motions *in limine*, and its motion for nonsuit. In addition, as Okoli states, Lockheed raised the issue two months after trial in its motions for a new trial and judgment notwithstanding the verdict. Okoli's argument that Lockheed waived the exhaustion issue is accordingly without merit.

The second reason Okoli contends his retaliation claim should not be barred is that "there is no requirement for an employee to return to the DFEH to report subsequent acts of discrimination[.]" Although Okoli does not expound on this argument, he cites three cases for this proposition, including one from this court (*Sandhu* v. *Lockheed Missiles & Space Co.* (1994) 26 Cal.App.4th 846 [31 Cal.Rptr.2d 617]). (The other cases are *Oubichon* v. *North American Rockwell Corporation* (9th Cir. 1973) 482 F.2d 569 and *Baker* v. *Children's Hospital Medical Center* (1989) 209 Cal.App.3d 1057 [257 Cal.Rptr. 768].) As we shall explain, these cases have no application here.

In *Oubichon* v. *North American Rockwell Corporation, supra,* 482 F.2d 569, the Ninth Circuit held that "[w]hen an employee seeks judicial relief for incidents not listed in his original charge to the [Equal Employment Opportunity Commission (EEOC)],[3] the judicial complaint nevertheless may encompass any discrimination *like or reasonably related* to the allegations of the EEOC charge, including new acts occurring during the pendency of the charge before the EEOC." (*Id.* at p. 571, italics added.) In that case, the employee's March 1967 Equal Employment Opportunity Commission (EEOC) complaint alleged a policy of racial discrimination on the part of his employer, manifested by his disciplinary suspension for marching in a September 1966 Congress of Racial Equality sponsored demonstration against the employer. While the EEOC complaint was being investigated, the employer engaged in three additional acts of racial discrimination in March through June 1967.

On appeal, the employer argued that the court lacked subject matter jurisdiction to consider the last three incidents. In rejecting the employer's argument, the Ninth Circuit stated: "To force an employee to return to the

---

[3] *Oubichon* v. *North American Rockwell Corporation, supra,* 482 F.2d 569, dealt with the federal counterpart of FEHA, title VII of the federal Civil Rights Act of 1964 (42 U.S.C. § 2000e et seq.). However, as we noted in *Sandhu,* "[s]ince the antidiscrimination objectives and public policy purposes of the two laws are the same, we may rely on federal decisions to interpret analogous parts of the state statute." (*Sandhu* v. *Lockheed Missiles & Space Co., supra,* 26 Cal.App.4th at p. 851.)

state agency every time he claims a new instance of discrimination in order to have the EEOC and the courts consider the subsequent incidents along with the original ones would erect a needless procedural barrier." (*Oubichon v. North American Rockwell Corporation, supra,* 482 F.2d at p. 571.) The court reasoned that the three latter incidents of racial discrimination were "like or reasonably related" to the first incident. (*Ibid.*)

Another case, indeed the leading case, setting forth the standard under which allegations of the EEOC charge limit the scope of a subsequent judicial action is the Fifth Circuit opinion in *Sanchez* v. *Standard Brands, Inc.* (5th Cir. 1970) 431 F.2d 455. In that case, the court held that the scope of the complaint is limited not by the EEOC charge, but rather by "the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." (*Id.* at p. 466.) The purpose of a charge of discrimination, the *Sanchez* court explained, is to "trigger the investigatory and conciliatory procedures of the EEOC." (*Ibid.*) Essentially, if an investigation of what *was* charged in the EEOC would necessarily uncover other incidents that were not charged, the latter incidents could be included in a subsequent action. This is because the policy interests embodied in title VII, i.e., "the resolution of disputes and elimination of unlawful employment practices by conciliation" (cf. *Yurick* v. *Superior Court, supra,* 209 Cal.App.3d at p. 1123 [discussing the FEHA]) would have been met in that case.

On the other hand, a commentator notes, ". . . when the difference between the charge and the complaint is a matter of adding an entirely new basis for the alleged discrimination, neither the *Sanchez* nor *Oubichon* rule sanctions the expansion of the complaint. For instance, a complaint alleging race discrimination is neither 'like or related to' nor likely to be discovered in a 'reasonable' investigation of a charge of sex discrimination." (1 Larson, Employment Discrimination (2d ed. 1994) transfer binder, § T49.11(c)(1), p. T-350.)

The other two cases cited by Okoli both involve situations where an investigation by the DFEH into the charges that were alleged would have led to discovery and the opportunity to conciliate the charges that were not alleged. In *Sandhu,* for example, the plaintiff's DFEH charge claimed he was discriminated against because of race, Asian. (He was from the Asian country of India.) In investigating Sandhu's claim of racial discrimination, the DFEH likely would have discovered Sandhu's Indian ancestry and would

have had the opportunity to conciliate the charge on that basis. After obtaining his right to sue letter from the DFEH, Sandhu filed a complaint alleging both race and national origin discrimination. His employer demurred on the ground, with respect to race, that Indians were Caucasians[4] and therefore could not be discriminated against, and with respect to national origin, that Sandhu had not identified national origin discrimination in his DFEH charge. We held that Sandhu had a cognizable claim for racial discrimination under the FEHA because he was subject to a discriminatory animus based on his membership in a group which was perceived to be distinct from other employees and which was not based on birthplace alone. (26 Cal.App.4th at pp. 851-857.) We also held that Sandhu's claim for national origin discrimination was viable since the administrative investigation into his charge of race discrimination likely encompassed national origin as well. (*Id.* at pp. 858-859.)

Similarly in *Baker* v. *Children's Hospital Medical Center, supra,* 209 Cal.App.3d 1057, the court allowed the plaintiff to pursue claims not included in his DFEH charge but that were "like or reasonably related to" the claim that was made. The African-American plaintiff in that case was a college student who worked part time at the hospital. During the school year, he worked only on weekends. During the summer, however, he was "on call" for numerous shifts, and he worked many hours during the summers of 1982 and 1983. In the summer of 1984, however, the plaintiff's supervisor did not give him any additional work hours. He complained, filing an internal grievance in August 1984. The following May, the plaintiff filed his DFEH charge claiming that during the summer of 1984 he was the victim of racial discrimination in that he was denied the opportunity to work on-call hours in favor of a Caucasian employee with less seniority. In his subsequent complaint in the superior court, the plaintiff alleged that the hospital harassed him, subjected him to differential treatment and biased evaluations, engaged in racial epithets, denied him promotions, and stopped calling him for "on-call" work shifts in favor of a Caucasian after he filed his internal grievance. After discussing *Sanchez, Oubichon,* and other cases, the court concluded that ". . . the allegations of harassment and differential treatment encompass the allegations of discrimination in his DFEH complaint. Moreover, it is reasonable that an investigation of the allegations in the original DFEH complaint would lead to the investigation of subsequent discriminatory acts undertaken by respondents in retaliation for appellant's filing an internal grievance." (*Id.* at p. 1065.)

---

[4] The employer relied on the " 'common popular understanding that there are three major human races—Caucasoid, Mongoloid, and Negroid.' [Citation.]" (*Sandhu* v. *Lockheed Missiles & Space Co., supra,* 26 Cal.App.4th at p. 851.)

In the instant case, in contrast, the unlawful retaliation, which occurred *after* the filing of the DFEH charge, would not reasonably have been uncovered in an investigation of the charges that were made, i.e., why Okoli had not been promoted in February 1988 to the position of alternate lead planner analyst and whether on at least two occasions, Okoli's supervisor, Daniel Pentacost,[5] made derogatory comments about Okoli's national origin. The DFEH was put on notice only of these specific charges. As Larson has noted in his treatise, "the more specific the original charge, the less likely that expansion into other areas will be allowed." (1 Larson, Employment Discrimination, *supra,* transfer binder, § T49.11(c)(1), p. T-352.)

This case is more analogous to the title VII case of *Smith* v. *Joseph Horne Co. Inc.* (W.D.Pa. 1977) 438 F.Supp. 1207. There the court stated that ". . . a timely charge with the EEOC is one requirement for the court's jurisdiction because of the goal of Title VII for the EEOC to have the opportunity to investigate and obtain voluntary compliance with the law. . . . [¶] Since the EEOC cannot have had the opportunity to investigate and conciliate events occurring subsequent to the February 18, 1975 charge filed with it, allegations regarding incidents occurring after the EEOC charge and after the filing of the complaint do not meet the jurisdictional prerequisite to this federal court action." (*Id.* at. p. 1213.)

Since Okoli's complaint added claims that were neither like nor reasonably related to his DFEH claim and were not likely to be uncovered in the course of a DFEH investigation, his retaliation claim is barred by the exhaustion of remedies doctrine. As in our *Martin* opinion, "so far as the record shows the DFEH never did learn of [Okoli's] assertion that, in addition to the [racial] discrimination of which [he] originally complained, [he] had been a victim of [unlawful retaliation occurring after the filing of the DFEH charge and involving a different supervisor]. Thus, so far as the record shows[,] the DFEH never received the opportunity, with respect to [this] additional theor[y] . . . to pursue the 'vital policy interests embodied in [the Act], i.e., the resolution of disputes and elimination of unlawful employment practices by conciliation. [Citations.]' [Citation.]" (*Martin* v. *Lockheed Missiles & Space Co., supra,* 29 Cal.App.4th at p. 1728.)

---

[5]The charges of retaliation principally involved manager Bill Gregory.

## DISPOSITION

The judgment is reversed. Costs on appeal to Lockheed.

Premo, J., and Elia, J., concurred.

Respondent's petition for review by the Supreme Court was denied November 2, 1995. Mosk, J., and Kennard, J., were of the opinion that the petition should be granted.