Filed 1/29/21  Sanchez v. S.C. CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| RICHARD SANCHEZ et al., | C084782 |
| Petitioners, | (Super. Ct. No. 34-2013-00142200) |
| v. | |
| THE SUPERIOR COURT OF SACRAMENTO COUNTY, | |
| Respondent; | |
| CITY OF SACRAMENTO et al., | |
| Real Parties in Interest. | |

Prior to filing an action alleging a violation of the Fair Employment and Housing Act (FEHA), an employee must exhaust his or her administrative remedies by filing a verified complaint with the Department of Fair Employment and Housing (DFEH) and obtaining a right to sue notice from DFEH.  Petitioner Richard Sanchez filed a verified

1

complaint with DFEH, alleging racial discrimination, sexual harassment and retaliation by real parties in interest in an effort to force his resignation or termination. The complaint alleged the most recent discrimination took place on September 20, 2012, the date of the complaint. Sanchez requested and was granted an immediate right to sue notice whereupon DFEH declared that it would take no further action on the complaint. In March 2013 Sanchez filed suit against the City of Sacramento alleging various FEHA violations, including retaliation. The city fired Sanchez in November 2013. However, Sanchez did not file a second complaint with the DFEH alleging retaliatory termination or obtain a right to sue notice. The trial court granted Sacramento's motion for judgment on the pleadings, finding Sanchez failed to exhaust his administrative remedies with respect to his termination claim. We issued an alternative writ of mandate. We now issue a peremptory writ of mandate directing the respondent court to vacate the order granting the motion for judgment on the pleadings.

## FACTUAL AND PROCEDURAL BACKGROUND

### Sanchez's Employer

Sacramento's Division of Integrated Recycling and Solid Waste (Division) provides recycling and garbage collection. The Division's drivers are members of the International Union of Operating Engineers, Local 39 labor union (Local 39). Sacramento's civil service board rules and regulations apply to all Division activities including hiring, promotions, transfers, and disciplinary actions. Sacramento's labor agreement with Local 39 governs the rights of union employees.

The Division applies "progressive discipline" under the civil service rules and labor agreement. Causes for discipline include incompetence, inefficiency in work performance, insubordination, and inexcusable absence without leave. Under this system, when an employee violates the Division's workplace policies, the employee is disciplined according to the severity of the violation and put on notice that further

2

violations will result in more discipline, up to and including termination. Progressive discipline strives to change employee behavior to curb problematic employee conduct.

After a previously disciplined employee again violates a workplace policy, greater discipline is imposed, depending on the severity and circumstances surrounding previous violations as well as the circumstances of the current violation.

**Workplace Incidents Involving Sanchez**

Sanchez worked for Sacramento as a sanitation engineer from January 1982 through November 21, 2013. Over the years, Sanchez had been disciplined forth various reasons.

The disciplinary action included a 10-hour suspension in 1993 for spraying a police officer and an accident victim with water. In 1993 he received an 80-hour suspension for failing to report to work. In 2002 he was suspended 10 hours for tardiness, improper conduct toward a supervisor, and leaving early without prior authorization, followed by another 10-hour suspension in 2007 for insubordination. Also in 2007, Sanchez was suspended for 30 hours for another act of insubordination and causing an accident that damaged a private vehicle. In 2010 he was suspended for 80 hours for violating the Division's policies and procedure manual and in 2012 he was suspended 160 hours for insubordination, discourteous treatment of another employee, and sexual harassment. Of 10 disciplinary actions, four were issued by a Hispanic supervisor, four were issued by African-American superintendents or general managers, and two were issued by White managers.

In May 2011 the city hired Steve Harriman as general manager of the integrated waste division. Harriman, in August 2011, met with the Division's street cleaning staff, including Sanchez. During the meeting, an employee asked Harriman a question. As Harriman turned to answer the question he heard something behind him. Harriman discovered Sanchez, his lips curled into an "O," pumping his fist back and forth to his

mouth. Sanchez's movements suggested oral sex, making fun of his coworker for asking a question.[1] Subsequently, pursuant to the city's memorandum of understanding with Local 39, Sanchez was disciplined for his conduct.

**Sanchez's DFEH Complaint**

Sanchez filed a complaint with DFEH on September 20, 2012, and received a right to sue letter the same day. Sanchez's complaint contained numerous allegations of discrimination and retaliation. According to Sanchez, it all began when Harriman lost his composure and over-reacted to a joke between Sanchez and a fellow employee. Harriman retaliated by trying to make Sanchez resign. Other city managers conspired to force Sanchez's resignation. The city retaliated by sanctioning Sanchez's paychecks at a lower grade, costing him thousands of dollars in pay and benefits. Harriman made it known he was after Sanchez's job and wanted the city to terminate Sanchez over a joke at a meeting. Harriman was doing everything he could to have Sanchez terminated. The complaint also alleged discrimination and retaliation against employees of color.

In September 2013 Sanchez engaged in another offensive incident. Sanchez and a coworker were talking in the Division's dispatch area. Sanchez used the word "fuck" repeatedly in front of other drivers and supervisors. Three supervisors asked Sanchez to refrain from cursing, but he ignored them. Subsequently, Sanchez left the room after telling the supervisors "this is for you," while moving his hands up and down his crotch as though stroking himself. Sanchez was terminated effective November 22, 2013.

---

[1] Sanchez presents a far different picture of the incident. He states it was an on-going joke with a fellow coworker. Sanchez kissed the butt of his hand implying the coworker is a management "kiss-ass." Although the coworker confirmed this, Harriman demanded an apology and contacted Sanchez's supervisor.

4

**Sanchez's Lawsuit**

### *Original Complaint*

Sanchez filed his original complaint on March 25, 2013, prior to his termination. He filed a first amended complaint on May 17, 2013, alleging eight causes of action: breach of employment contract, breach of the implied covenant of good faith and fair dealing, FEHA sexual harassment and discrimination, FEHA racial discrimination, FEHA retaliation, defamation, intentional infliction of emotional distress, and loss of consortium.

In his complaint, Sanchez elaborated on the "joke" described in his DFEH complaint, stating he would put the thumb pads of his two hands together and kiss them to simulate an "ass-kissing motion," "an inside joke between co-workers who kidded each other about many things over many years." Sanchez alleged supervisors Harriman and William Skinner engaged in a hostile, embarrassing, and emotionally abusive conduct beginning around March 2011 and continuing. Harriman and others tried to force Sanchez to resign. Sanchez also described retaliation including approving a false document relating to pay and approving various paychecks at a lower grade, costing Sanchez pay and benefits. Three individuals and Harriman "signed and endorsed a document they knew was untrue" relating to pay in March 2012. The payrate penalty was ongoing when Sanchez presented his claim to the city. However, Harriman's ultimate goal was Sanchez's termination. In June 2012 Skinner made a false allegation that Sanchez was sleeping on the job. Sanchez also claims racial discrimination by the city against men of color. This culminated in Sanchez's DFEH complaint against the city in September 2012.

The trial court sustained the city's demurrer to the first two causes of action with leave to amend. If Sanchez did not file a second amended complaint by January 16,

2014, the first amended complaint would remain the operative complaint and the first two causes of action would be "deemed nullities."

### *Second Amended Complaint*

Sanchez did not file a second amended complaint by the deadline. Much later, on November 2, 2016, Sanchez filed a second amended complaint excluding the first two causes of action and adding causes of action for "FEHA Harassment and/or Discrimination based on Color and/or Race" and "FEHA Failure to Prevent Harassment, Discrimination, and/or Retaliation" After the city objected to the complaint as untimely, Sanchez did not pursue the amendment and agreed the first amended complaint would remain the operative complaint.

### *Amendment to First Amended Complaint*

In July 2014 Sanchez requested a stipulation to allow amendment of the first amended complaint to include retaliatory termination. Sanchez challenged his termination administratively but did not want to wait for the outcome of his administrative appeal, and sought to address the termination in the trial court. The city agreed to the stipulation permitting the amendment. Sanchez did not ask the city to stipulate to waive Sanchez's obligation to exhaust his administrative remedies.

The trial court signed the stipulation in August 2014. However, Sanchez did not file an amended complaint alleging retaliatory termination. Accordingly, the city did not file an answer responding to the stipulated language.

### *Motion in Limine, Motion to Strike, and Motion for Judgment on the Pleadings*

The city filed a motion in limine to exclude any reference to Sanchez's termination. The motion was based on Sanchez's failure to exhaust his administrative remedies. The trial court gave a tentative ruling granting the motion, but directed the city file a motion for judgment on the pleadings or a motion to strike.

6

The trial also court directed Sanchez to file an amended complaint and allowed the city to challenge the amended complaint. Sanchez filed a "Stipulated Operative Complaint for Damages." The city filed a motion to strike and motion for judgment on the pleadings. In its motion for judgment on the pleadings, the city argued Sanchez failed to exhaust his administrative remedies with respect to his termination claim. The court granted both motions. The court struck the following language from Sanchez's complaint: "Defendants Harriman and the City gave pretextual reasons for terminating Sanchez. The facts supporting those pretextual reasons were stated in plaintiff's termination letter as follows: That plaintiff used the word 'f---' and/or made an offensive hand gesture." The court found Sanchez failed to exhaust his administrative remedies because he failed to return to DFEH to file a claim for retaliation based on his November 21, 2013 termination.

### Petition for Writ of Mandate

Sanchez filed a petition for writ of mandate challenging the trial court's rulings granting the motion for judgment on the pleadings and motion to strike. We issued an alternative writ of mandate.

## DISCUSSION

### I

The parties agree that, since the facts are not disputed, the proper standard of review is de novo. We review the record independently, giving no deference to the trial court's judgment. (*Bame v. City of Del Mar* (2001) 86 Cal.App.4th 1346, 1354; *Estate of Coate* (1979) 98 Cal.App.3d 982, 986.)

### II

Exhaustion of administrative remedies is " 'a jurisdictional prerequisite to resort to the courts.' " (*Johnson v. City of Loma Linda* (2000) 24 Cal.4th 61, 70; *Medix Ambulance Service, Inc. v. Superior Court* (2002) 97 Cal.App.4th 109, 116.) Before

7

filing an action for damages, an employee must exhaust administrative remedies by timely filing a verified complaint with DFEH and obtaining a right to sue notice from the agency. (*Wills v. Superior Court* (2011) 195 Cal.App.4th 143, 153 (*Wills*).) An administrative complaint is timely if it is filed with DFEH within one year from the date upon which the alleged unlawful employment practice occurred, states the names of the perpetrators, and sets forth the particulars of the alleged acts. (Gov. Code, § 12960, subds. (c), (e).)

The exhaustion requirement must be applied in light of the requirement's purpose. It is not a mere formality, a hoop through which complainants must jump for no reason, nor is it a makeweight for the benefit of employers, restricting access to the courts by aggrieved employees. Rather, "The doctrine of exhaustion of administrative remedies evolved for the benefit of the courts, not for the benefit of litigants, the state or its political subdivisions. It rests 'on considerations of comity and convenience,' and its basic purpose is to secure a 'preliminary administrative sifting process' [citation] to lighten the burden of overworked courts in cases where administrative remedies are available and are as likely as the judicial remedy to provide the wanted relief." (*Bozaich v. State of California* (1973) 32 Cal.App.3d 688, 698; See also, Links, Cal. Civ. Practice Guide: Civil Rights Litigation (The Rutter Group 2020) ¶ 1:15.)

Here, Sanchez filed his DFEH complaint on September 20, 2012. DFEH closed its investigation and issued Sanchez a right to sue letter the same day. The employment action that is the subject of this appeal—Sanchez's termination—did not occur until 14 months after his DFEH complaint and eight months after Sanchez filed the civil complaint authorized by the right to sue letter. Understandably, the DFEH complaint did not, because it could not, refer to a termination that had not occurred. It is on this basis that the city argues Sanchez failed to exhaust his administrative remedies; he should have amended the DFEH complaint to allege a later termination of his employment on account of the discriminatory actions described in the original complaint.

8

It is reasonable to ask what purpose would be served in providing an agency conducting the preliminary sifting process with additional information that does no more than firm up the allegations already made. California courts have sensibly followed federal standards regarding the permissible scope of civil actions under title VII of the federal Civil Rights Act of 1964 (42 U.S.C. § 2000e et seq.) after an employee files an administrative complaint with the federal Equal Employment Opportunity Commission (EEOC). (*Beyda v. City of Los Angeles* (1998) 65 Cal.App.4th 511, 517 [title VII cases may be considered in interpreting the FEHA].) The administrative exhaustion requirement is satisfied if the allegations of the civil action are within the scope of the EEOC charge, any EEOC investigation actually completed, or any investigation that might reasonably have been expected to grow out of the charge. (See e.g., *Gregory v. Georgia Dept. of Human Res.* (11th Cir. 2004) 355 F.3d 1277.)

Consistent with these principles, the administrative exhaustion requirement is satisfied if the FEHA claims in the judicial complaint are likely and reasonably related to those in the DFEH complaint, or are likely to be uncovered in the course of a DFEH investigation. (*Wills, supra*, 195 Cal.App.4th at p. 154; *Okoli v. Lockheed Technical Operations Co.* (1995) 36 Cal.App.4th 1607, 1617 (*Okoli*).) The DFEH complaint " 'need not presage with literary exactitude the judicial pleadings which may follow.' " (*Nazir v. United Airlines, Inc.* (2009) 178 Cal.App.4th 243, 267.) In determining whether Sanchez exhausted his administrative remedies on the termination claim, we construe the DFEH complaint liberally in light of what might be uncovered in a reasonable investigation. (*Id.* at p. 268.)

In his complaint to DFEH, Sanchez set forth a series of alleged actions by Harriman focused on having Sanchez terminated from his position. Harriman's animus began after he over-reacted to the "joke" between Sanchez and a coworker. Harriman and other city managers conspired to force Sanchez to resign. The city sanctioned Sanchez by decreasing his pay and benefits. Harriman made it known he was after

9

Sanchez's job and wanted the city to terminate Sanchez after 29 years of employment because of a joke during a meeting. Sanchez was harassed by a manager whose sole focus was to have him terminated.

The city relies on *Okoli, supra*, 36 Cal.App.4th 1607, arguing Sanchez failed to exhaust his administrative remedies. In *Okoli*, the plaintiff, Okoli, filed a DFEH complaint alleging that he was denied a promotion based on his race and national origin. Okoli obtained a right to sue notice and then filed a civil action alleging racial and national origin discrimination, racial harassment, and retaliation against his employer. (*Id.* at pp. 1609-1610.) The retaliation claim was based on adverse employment actions Okoli claimed resulted from his filing the DFEH complaint. (*Id.* at pp. 1613, 1617.)

The jury found for the employer on the causes of action for discrimination and harassment, but found for Okoli on the retaliation claim. (*Okoli, supra*, 36 Cal.App.4th at p. 1612.) The employer appealed, arguing Okoli never mentioned retaliation in his DFEH complaint and the trial court lacked jurisdiction to hear the claim under the exhaustion of remedies doctrine. (*Id.* at p. 1609.) The Court of Appeal agreed and reversed. (*Id.* at p. 1612.)

The appellate court concluded that "the unlawful retaliation, which occurred *after* the filing of the DFEH charge, would not reasonably have been uncovered in an investigation of the charges that were made, i.e., why Okoli had not been promoted" and whether his supervisor had made derogatory comments about his national origin. (*Okoli, supra,* 36 Cal.App.4th at p. 1617.) Nor was the retaliation claim like or reasonably related to Okoli's DFEH claim. (*Ibid.*)

Here, in contrast, although the termination occurred over a year after Sanchez filed his claim with DFEH, the allegations in Sanchez's DFEH complaint clearly foreshadow the retaliatory termination based on Harriman's desire to oust him. Although Sanchez was terminated after the filing of the DFEH complaint, Sanchez in his original complaint set forth a series of actions by his supervisor and others aimed at forcing him to resign.

10

The complaint alleges the ultimate goal of the complained of behavior was Sanchez's termination. The allegations in the DFEH complaint are "like and reasonably related to" the discrimination and retaliation claims that culminated in Sanchez's termination, and we would expect an investigation into the former to uncover the facts giving rise to the latter. (*Wills, supra*, 195 Cal.App.4th at p. 154; *Okoli, supra*, 36 Cal.App.4th at p. 1617.)

The purpose of a DFEH complaint is to trigger the investigatory and conciliatory procedures of the DFEH, not to limit an employee's access to the courts. (*Saavedra v. Orange County Consolidated Transportation etc. Agency* (1992) 11 Cal.App.4th 824, 827.) Sanchez's DFEH complaint clearly alleged he suffered discrimination and retaliation in connection with the incident involving Harriman. These allegations are "like and reasonably related to" the ultimate result: Sanchez's termination. It is fanciful to suppose the actions of the administrative agency in this case would have been any different had the complaint filed by Sanchez, after setting forth his earnest belief that the city officials were trying to fabricate a case to fire him, added allegations that the city followed through and fired him for all the retaliatory reasons set forth in the original complaint. His termination was a reasonably foreseeable outcome of the conduct alleged in the complaint. That allegations and information provided by Sanchez permitted DFEH to rationally exercise its discretion to conduct an investigation and intervene, thus obviating the need for judicial action. The complaint was sufficient, without further amendment, to exhaust administrative remedies as to the issue of retaliatory termination. We reject the trial court's conclusion to the contrary.

## DISPOSITION

Let a peremptory writ of mandate issue directing the respondent court to vacate its order granting the motion for judgment on the pleadings and to enter a new order denying the motion for judgment on the pleadings.  Sanchez shall recover his costs.  (Cal. Rules of Court, rule 8.493(a)(1).)


                                                /s/

                                             RAYE, P.J.


We concur:


  /s/

MURRAY, J.


  /s/

HOCH, J.

12