Victoria McCARTHY, Katherine Schmitt, Plaintiffs,

v.

**R.J. REYNOLDS TOBACCO CO.,**
**and Does 1–10, Defendants.**

**No. CIV. 2:09–2495 WBS DAD.**

United States District Court,
E.D. California.

May 4, 2011.

Aldon Louis Bolanos, Aldon Bolanos Law Corp., Sacramento, CA, for Plaintiffs.

Anne-Marie Waggoner, Tarun Mehta, Littler Mendelson P.C., Walnut Creek, CA, for Defendants.

*MEMORANDUM AND ORDER RE: MOTION FOR SUMMARY JUDGMENT*

WILLIAM B. SHUBB, District Judge.

Plaintiffs Victoria McCarthy and Katherine Schmitt brought this action against their former employer, defendant R.J. Reynolds Tobacco Co., alleging claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e–2, 2000e–3, for sexual harassment and retaliation, under California's Fair Employment and Housing Act ("FEHA"), Cal. Gov't Code § 12940, for disability discrimination and failure to accommodate, and for tortious adverse employment actions in violation of public policy. Defendant now moves for summary judgment on all claims pursuant to Federal Rule of Civil Procedure 56.[1]

I. *Evidentiary Objections*

"A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." Fed.R.Civ.P. 56(c)(2). "[T]o survive summary judgment, a party does not necessarily have to produce evidence in a form that would be admissible at trial, as long as the party satisfies the requirements of Federal Rules of Civil Procedure 56." *Fraser v. Goodale,* 342 F.3d 1032, 1036–37 (9th Cir.2003) (quoting *Block v. City of Los Angeles,* 253 F.3d 410, 418–19 (9th Cir.2001)) (internal quotation marks omitted). Even if the non-moving party's evidence is presented in a form that is currently inadmissible, such evidence may be evaluated on a motion for summary judgment so long as the moving party's objections could be cured at trial.

---

1. The court gave plaintiffs an opportunity to file a second opposition after they untimely filed their first opposition. (Docket No. 31.) The court considers all the arguments and evidence submitted to the court, but unless otherwise noted, all references herein are to plaintiffs' second opposition, defendant's second reply, and defendant's second set of evidentiary objections.

*See Burch v. Regents of the Univ. of Cal.*, 433 F.Supp.2d 1110, 1119–20 (E.D.Cal. 2006).

Defendant has filed twenty-one evidentiary objections. (Docket No. 40.) Defendant objects to portions of plaintiffs' deposition testimony on the grounds of lack of foundation, hearsay, speculation,[2] lack of personal knowledge, and expert opinion testimony. The court gave plaintiffs an opportunity to respond to the objections and defendant an opportunity to reply. Plaintiffs have withdrawn the evidence referenced in defendant's objections 14 and 16, and the court will not consider that evidence. Defendant has withdrawn objection 7.

In the interest of brevity, as defendant is aware of the substance of its objections and the grounds asserted in support of each objection, the court will not review the substance or grounds of all the objections here. Defendant's objections 1–2, 4, 8, 10–11, 13, 17–18, and 20–21 are overruled, as they could be presented in a form that would be admissible at trial.[3] Defendant's objections 3, 9, 15, and 19 are sustained on the basis that the evidence is inadmissible hearsay that could not be cured at trial.[4] Defendant's objections 5, 6, and 12 are sustained on personal knowledge grounds.[5]

---

**2.** Objections to evidence on the ground that it is speculative are duplicative of the summary judgment standard itself. A court can award summary judgment only when there is no genuine dispute of material fact. Statements based on speculation or improper legal conclusions are not *facts* and will not be considered on a motion for summary judgment. Objections on this ground are superfluous. *See Burch v. Regents of Univ. of Cal.*, 433 F.Supp.2d 1110, 1119.(E.D.Cal.2006). Objections 4, 10–11, 17–18, and 20–21 are therefore overruled.

**3.** Objections 1 and 2 relate to deposition testimony by plaintiffs about statements made by Madsen and other employees that were made within the scope of their employment. These statements are not hearsay because they constitute admissions of a party-opponent. *See* Fed.R.Evid. 801(d)(2)(D).

Objections 8 and 13 relate to deposition testimony by plaintiffs about which the depositions did not show that they had personal knowledge. Plaintiffs demonstrated personal knowledge in their response to the objections.

The others are objections to speculation, overruled as discussed in footnote 2.

**4.** Pursuant to the court's simultaneously-filed Final Pretrial Order, plaintiffs may call themselves and Jared LaLonde as witnesses, but they may not call Keith Johnson, "Nicole," or the EEOC investigator as witnesses. In fact, plaintiffs did not list the latter three witnesses in their Pretrial Statement. Even though LaLonde may be called as a witness, three of the objections must be sustained: Objection 3 (deposition testimony by McCarthy that three employees, Jared LaLonde, Keith Johnson, and "Nicole," told her they had been confronted by Madsen regarding the complaints); Objection 9 (deposition testimony by McCarthy that Jared LaLonde told her that Fedewa said McCarthy was "coo-coo"); and Objection 19 (deposition testimony by Schmitt that Jared LaLonde told her that he told Madsen that plaintiffs were the ones who complained about her).

Plaintiffs' counsel spoke to LaLonde over the phone, who apparently referenced his conversation with Madsen but not the one with Fedewa. LaLonde refused to sign a declaration summarizing that phone conversation. Even if plaintiffs subpoenaed him for trial, there is no basis to know what he would say, so the hearsay objections are valid.

Objection 15 refers to deposition testimony by McCarthy stating that the EEOC told her that defendant never disciplined Madsen. In response to the objection, McCarthy filed a declaration naming the individual at the EEOC and stating that the individual could testify on the matter. However, as the EEOC investigator may not be called at trial, McCarthy's statement is simply hearsay.

**5.** Objections 5 and 6 refer to deposition testimony by McCarthy stating that Madsen had McCarthy make spreadsheets but then never used the spreadsheets. Even in reply to the objections, plaintiffs did not demonstrate how McCarthy had personal knowledge of this.

Objection 12 refers to deposition testimony by McCarthy that Fedewa was required (pre-

## II. *Relevant Facts*

Plaintiffs began working for defendant in August of 2006 as Trade Marketing Representatives ("TMRs"). (Waggoner Decl. Ex. 2 ("Schmitt Dep.") at 9:4–7 (Docket No. 18); Waggoner Decl. Ex. 3 ("McCarthy Dep.") at 19:13–18.) Starting in July or August of 2007, plaintiffs and other employees began to have complaints about Michelle Madsen, their supervisor. Madsen used vulgar language and discussed whether or not the employees were in relationships. (Bolanos Decl. Ex. A ("McCarthy Dep.") at 67:21–25; 69:20–72:6 (Docket No. 33).) In particular, Madsen told McCarthy that she should not have boyfriends if she wanted to get ahead, because relationships "mess up" careers. (*Id.* at 70:3–20.) Madsen also told McCarthy that Madsen no longer had sex with her husband because it interfered with her work. (*Id.* at 71:12–16.) In contrast, Madsen told Schmitt that her work "was starting to lack because [Schmitt's] bedroom was a very lonesome place," and that she needed to have "a more active bedroom" for her work to improve. (Bolanos Decl. Ex. C ("Schmitt Dep.") at 42:2–7.) Madsen also told another employee, Kyle, that "his work would be better if his girlfriend lived here, because he wouldn't be so focused on having an empty bedroom." (*Id.* at 45:2–8.) Madsen also liked to talk about what sexual positions people preferred, and referred to the fact that another employee, John Walker, was homosexual. (Bolanos Decl. McCarthy Dep. at 86:3–12.)

In late August or early September of 2007, plaintiffs separately complained to defendant's Human Resources department about Madsen's behavior, particularly about what they believed to be Madsen's improper termination of Walker because of his sexuality. (Waggoner Decl. Schmitt Dep. at 91:9–92:3, 92:20–96:2; Waggoner Decl. McCarthy Dep. at 130:5–16, 131:4–24, 132:13–133:8, 134:16–135:7, 137:5–16, 138:24–139:12, 139:21–141:9, 144:15–145:5, 146:20–148:9.) On September 12, 2007, Renee Duszynski from Human Resources held a meeting with all of the employees under Madsen's supervision to discuss the problems with Madsen. (Waggoner Decl. Schmitt Dep. at 60:1–21.) Many employees voiced concerns about Madsen. (*Id.* at 60:1–67:17; Bolanos Decl. McCarthy Dep. at 166:10–20.)

On October 15, 2007, defendant contends that Madsen was issued a "final written reprimand" for her conduct, the most severe form of written discipline short of termination. (Sullivan Decl. ¶ 6 (Docket No. 20).) Madsen claims that she did not know that plaintiffs were the ones who complained about her conduct until much later. (Madsen Decl. ¶ 6 (Docket No. 16).)

Starting in October of 2007, Madsen required plaintiffs to move boxes for two days and clean their storage units multiple times, tasks that were normally outsourced to third parties. (Bolanos Decl. McCarthy Dep. at 216:5–15, 229:8–230:7.) Beginning in September of 2007, Madsen changed Schmitt's time cards to inaccurately reflect her sick leave, and denied many of plaintiffs' reimbursement requests, something she had not previously done. (Bolanos Decl. Schmitt Dep. at 86:23–87:5, 190:12–191:6.) Madsen also started calling plaintiffs almost every day at 8:00 a.m. to learn if and where they were working and threatening to "pop into" their routes, something she did not do for other employees. (*Id.* at 87:6–10, 113:7–114:25.) Schmitt perceived these calls as attempts to "scare" her. (*Id.* at 87:6–10.)

sumably by defendant) to change his management style to become less militant. McCarthy says she has personal knowledge of this because she saw Fedewa's personnel file. If this is her only reason for personal knowledge, the file itself would be the best evidence.

McCarthy testified that Madsen touched her inappropriately in October of 2007 by touching McCarthy's leg with her hand for a "couple seconds" while the two were driving to lunch, and then touching her shoe against McCarthy's pants under the table at lunch. (Waggoner Decl. McCarthy Dep. at 184:14–192:11, 295:19–296:2, 291:10–20, Ex. 32.) McCarthy's testimony regarding when she first reported the touching to defendant is contradictory: She alternately states that she first reported it in December of 2007 and July of 2008. (Waggoner Decl. McCarthy Dep. at 295:19–296:2, Ex. 32; Bolanos Decl. McCarthy Dep. at 199:15–21.)

Plaintiffs each took a leave of absence from mid-December to early January. Schmitt took leave from December 13, 2007, to January 7, 2008, and McCarthy took leave from December 17, 2007, to January 8, 2008. (Garrison Decl. in Supp. of Def.'s Mot. for Summ. J. ("Garrison Decl.") ¶¶ 6–7 (Docket No. 17).)

Starting on January 1, 2008, defendant underwent corporate reorganization and plaintiffs started reporting to Bryan Fedewa rather than Madsen. (Fedewa Decl. ¶ 2 (Docket No. 15); Madsen Decl. ¶ 20.) Fedewa began calling plaintiffs every morning at 8:00 a.m., as Madsen had done. (Bolanos Decl. Schmitt Dep. at 203:12–14.) On January 18, 2008, Madsen issued written reprimands to plaintiffs for violating management instructions[6] in November and December of 2007, when she was still their supervisor; she claims that she waited until mid-January to discipline them because they had been on leave. (Madsen Decl. ¶¶ 2, 8, 13–16, Exs. 3–5.) At some point after the January 18, 2008, review, Schmitt requested a lateral transfer to

Colorado, which was denied because of the written reprimand she had received. (Bolanos Decl. Schmitt Dep. at 169:4–11, 173:3–14.)

From February 15, 2008, to March 27, 2008, Schmitt took a second leave of absence. (Garrison Decl. ¶ 6.) On March 3, 2008, she filed a complaint with the Equal Employment Opportunity Commission ("EEOC"). (Garrison Decl. ¶¶ 11–12, Exs. 10–11; Waggoner Decl. Schmitt Dep. at 279:21–25, 282:23–25, 283:5–18, Ex. 79.) She returned to work for a few months and then took a final leave of absence from June 5 to October 27, 2008. (Garrison Decl. ¶ 6.) At that point, she tendered her resignation. (*Id.*) Schmitt states that she resigned because of Fedewa's "retaliation, hostile attitude and militant managerial style." (Waggoner Decl. Schmitt Dep. Ex. 140; *see also id.* at 228:12–229:22, 231:1–232:7, 512:5–13.)

On February 12, 2008, McCarthy filed a complaint with the EEOC. (Garrison Decl. ¶¶ 9–10, Exs. 6–9; Waggoner Decl. McCarthy Dep. at 271:1–14, 276:12–20, Ex. 28.) The parties dispute whether Fedewa did an analysis of McCarthy's work in March of 2008 and discovered that there were problems. (Fedewa Decl. ¶¶ 5–7, Ex. 1.) McCarthy took two more leaves of absence, from March 24 to March 28 and April 18 to June 23 of 2008. (Garrison Decl. ¶ 7.) On June 25, 2008, McCarthy received a written reprimand from Fedewa relating to the problems that had been discovered in March, before her leaves of absence. (Fedewa Decl. ¶¶ 5–7, Ex. 1.) McCarthy then took a final leave of absence from June 27, 2008, to February 24, 2009, and filed a second EEOC complaint

---

**6.** Plaintiffs had failed to report their activities for particular days, and had mostly spent those days "out of the field," working on their expense reports together. (Madsen Decl. ¶¶ 2, 8, 13–16, Exs. 3–5 (Docket No. 16).)

Plaintiffs contend that they were only following orders by working on their expense reports. (Bolanos Decl. McCarthy Dep. at 299:21–301:11.)

during her leave on September 9, 2008. (Garrison Decl. ¶¶ 7, 9–10, Exs. 6–9; Waggoner Decl. McCarthy Dep. at 271:1–14, 276:12–20.) McCarthy was terminated on February 24, 2009, when she did not return to work. (Garrison Decl. ¶ 7.) She contends that she is permanently disabled and is unable to work, and has been since April of 2008; she has been collecting Social Security disability benefits since that time. (Waggoner Decl. McCarthy Dep. at 537:14–22, 587:17–20, 609:7–17, 616:10–19.)

## III. *Discussion*

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a).[7] A material fact is one that could affect the outcome of the suit, and a genuine issue is one that could permit a reasonable jury to enter a verdict in the non-moving party's favor. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The party moving for summary judgment bears the initial burden of establishing the absence of a genuine issue of material fact and can satisfy this burden by presenting evidence that negates an essential element of the non-moving party's case. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Alternatively, the moving party can demonstrate that the non-moving party cannot produce evidence to support an essential element upon which it will bear the burden of proof at trial. *Id.*

Once the moving party meets its initial burden, the burden shifts to the non-moving party to "designate 'specific facts showing that there is a genuine issue for trial.' " *Id.* at 324, 106 S.Ct. 2548 (quoting

then-Fed. R. Civ. P. 56(e)). To carry this burden, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). "The mere existence of a scintilla of evidence ... will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson,* 477 U.S. at 252, 106 S.Ct. 2505.

In deciding a summary judgment motion, the court must view the evidence in the light most favorable to the non-moving party and draw all justifiable inferences in its favor. *Id.* at 255, 106 S.Ct. 2505. "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge ... ruling on a motion for summary judgment ...." *Id.*

Plaintiffs' claims for Title VII retaliation and FEHA disability discrimination are subject to the *McDonnell Douglas* burden-shifting analysis used at summary judgment to determine whether there are triable issues of fact for resolution by a jury. *Steiner v. Showboat Operating Co.,* 25 F.3d 1459, 1464–65 (9th Cir.1994) (retaliation); *Guz v. Bechtel Nat'l Inc.,* 24 Cal.4th 317, 354, 100 Cal.Rptr.2d 352, 8 P.3d 1089 (2000) (discrimination); *see McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Under *McDonnell Douglas,*

a plaintiff must first establish a prima facie case of discrimination [or other illegal conduct]. The burden then shifts to the employer to articulate a legitimate, nondiscriminatory reason for its employment action. If the employer

**7.** Federal Rule of Civil Procedure 56 was revised and rearranged effective December 1, 2010. However, as stated in the Advisory Committee Notes to the 2010 Amendments to Rule 56, "[t]he standard for granting summary judgment remains unchanged."

meets this burden, the presumption of intentional discrimination [or other illegal conduct] disappears, but the plaintiff can still prove disparate treatment by, for instance, offering evidence demonstrating that the employer's explanation is pretextual.

*Raytheon Co. v. Hernandez,* 540 U.S. 44, 49 n. 3, 124 S.Ct. 513, 157 L.Ed.2d 357 (2003) (internal citation omitted).

## A. *Title VII Claims*

Title VII of the Civil Rights Act of 1964 makes it "an unlawful employment practice for an employer ... to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin ...." 42 U.S.C. § 2000e–2(a)(1). Plaintiffs have brought claims under Title VII for sexual harassment and retaliation.

### 1. *Sexual Harassment*

Under Title VII, to establish a claim for sexual harassment, plaintiffs must show that they either were subjected to "quid-pro-quo harassment," meaning that a supervisor conditioned employment benefits on sexual favors, or that they were subjected to harassment in the form of a hostile work environment. *See Craig v. M & O Agencies, Inc.,* 496 F.3d 1047, 1054 (9th Cir.2007) (discussing "two categories" of Title VII sexual harassment cases). The record contains no evidence of any quid-pro-quo,[8] and, consequently, the court addresses only whether plaintiffs were subjected to a hostile work environment.

To prevail on a hostile workplace claim under Title VII, a plaintiff must show: (1) that she was subjected to verbal or physical conduct of a harassing nature; (2) that the conduct was unwelcome; and (3) that the conduct was sufficiently severe or pervasive to alter the conditions of the plaintiff's employment and create an abusive work environment. *See Kortan v. Cal. Youth Auth.,* 217 F.3d 1104, 1109–10 (9th Cir.2000). Sexual harassment is actionable under Title VII to the extent that it occurs "because of" the plaintiff's sex. *Oncale v. Sundowner Offshore Servs., Inc.,* 523 U.S. 75, 79, 118 S.Ct. 998, 140 L.Ed.2d 201 (1998); *Nichols v. Azteca Rest. Enters., Inc.,* 256 F.3d 864, 872 (9th Cir.2001).

"[A] sexually objectionable environment must be both objectively and subjectively offensive ...." *Faragher v. City of Boca Raton,* 524 U.S. 775, 787, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998).

[T]o determine whether an environment is sufficiently hostile or abusive to violate Title VII, [courts] look "at all the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance."

*Little v. Windermere Relocation, Inc.,* 301 F.3d 958, 966 (9th Cir.2002) (quoting *Clark Cnty. Sch. Dist. v. Breeden,* 532 U.S. 268, 270–71, 121 S.Ct. 1508, 149 L.Ed.2d 509 (2001)). "[T]he required showing of severity or seriousness of the harassing conduct varies inversely with the pervasiveness or

---

**8.** Plaintiffs seem to argue that Madsen's comments about her employees' relationships, while not conditioning employment benefits on a sexual relationship with *her,* did condition employment benefits on having or not having a sexual relationship *in general.* Even if such conduct could constitute harassment, there is no evidence to support this argument.

Madsen appears to have made conversational remarks about the correlation between the quality of employees' work and whether they were in a relationship, but plaintiffs point to no evidence to indicate that their employment benefits would change based on their relationship status.

frequency of the conduct." *Ellison v. Brady*, 924 F.2d 872, 878 (9th Cir.1991). "[S]imple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." *Faragher*, 524 U.S. at 788, 118 S.Ct. 2275 (internal quotation marks and citation omitted); *id.* (noting Title VII is not a "general civility code," but that its standards are designed to "filter out complaints attacking the ordinary tribulations of the workplace, such as the sporadic use of abusive language, gender-related jokes, and occasional teasing") (internal quotation marks omitted).

■ "[S]ex discrimination consisting of same-sex sexual harassment is actionable under Title VII ...." *Oncale*, 523 U.S. at 82, 118 S.Ct. 998. To prevail on this claim, plaintiffs are "required to prove that any harassment [that] took place [was] 'because of sex.'" *Nichols*, 256 F.3d at 872 (quoting *Oncale*, 523 U.S. at 79, 118 S.Ct. 998). In *Oncale*, the United States Supreme Court described three circumstances in which a court can infer that the alleged conduct of a purported harasser against someone of the harasser's sex is "because of sex": (1) when proposals to engage in sexual activity are made by the harasser and there is credible evidence that the harasser is homosexual; (2) when the victim is treated in a sex-specific manner which suggests hostility toward people of the victim's sex; or (3) when men and women are treated differently by the harasser.[9] *Id.* at 80–81, 118 S.Ct. 998.

■ The inappropriate comments by Madsen about whether employees should be sexually active could be seen by a jury to be dependent on plaintiffs being women or based on Madsen's hostility to women. Madsen told McCarthy that she should not have boyfriends if she wanted to get ahead, and informed McCarthy that Madsen's success was due to her refusal to have sex with her husband. Conversely, Madsen told Schmitt that she ought to have a boyfriend. Her remarks to Kyle, on the other hand, were simply that he was too focused on having an empty bedroom. There is also evidence that Madsen referred to McCarthy and Schmitt as "her girls," whereas there is no evidence that she referred to any of the male employees as "her guys."

While not particularly strong evidence that Madsen's behavior was "because of" plaintiffs' sex, plaintiffs may present this evidence to the jury to decide. Given the vagaries in the appellate caselaw, this court cannot say that this conduct was not objectively severe or pervasive from "the reasonable woman's perspective." *See Little v. Windermere Relocation, Inc.*, 301 F.3d 958, 966 (9th Cir.2002). Accordingly, the court will deny defendant's motion for summary judgment on plaintiffs' claim for sexual harassment under Title VII.

### 2. *Retaliation*

■ To make out a prima facie case of retaliation in violation of Title VII, a plaintiff must show "(1) involvement in a protected activity, (2) an adverse employment action and (3) a casual link between the two." *Brooks v. City of San Mateo*, 229 F.3d 917, 928 (9th Cir.2000). As to the first element, an employee's formal or informal complaint regarding unlawful employment practices is "protected activity," and a plaintiff need only show that her belief that an unlawful employment practice occurred was "reasonable." *See Passantino v. Johnson & Johnson Consumer Prods., Inc.*, 212 F.3d 493, 506 (9th Cir. 2000); *Moyo v. Gomez*, 40 F.3d 982, 985 (9th Cir.1994). As to the second element,

---

**9.** While the list in *Oncale* was not exhaustive, plaintiffs do not suggest any other way in which Madsen's conduct occurred "because of" sex.

for purposes of a retaliation claim, a challenged action must be "materially adverse," which means that it would dissuade a reasonable worker from exercising protected rights. *See Burlington N. & Santa Fe Ry. Co. v. White,* 548 U.S. 53, 68, 126 S.Ct. 2405, 165 L.Ed.2d 345 (2006). As to the third element, a plaintiff may establish a causal link between the protected activity and the adverse action by circumstantial evidence, including the employer's knowledge of the protected activity and a proximity in time between the protected action and the adverse employment act. *Jordan v. Clark,* 847 F.2d 1368, 1376 (9th Cir. 1988); *see Passantino,* 212 F.3d at 507 ("[W]hen adverse decisions are taken within a reasonable period of time after complaints of discrimination have been made, retaliatory intent may be inferred.").

It is undisputed that plaintiffs complained to Human Resources about Madsen in late August or early September of 2007. Plaintiffs complained about Madsen's treatment of Walker and about her treatment of other employees, believing that they were experiencing a hostile work environment. Schmitt filed a complaint with the EEOC on March 3, 2008, and McCarthy filed complaints with the EEOC on February 12, 2008, and September 9, 2008. These complaints were protected activities. *See Moyo,* 40 F.3d at 985.

 Plaintiffs argue that actions taken by Madsen and Fedewa after their initial complaints to Human Resources were sufficiently "materially adverse" to constitute retaliation. After plaintiffs first complained about Madsen's behavior,[10] they received negative reviews from Madsen and Fedewa, Schmitt requested a transfer that was denied because of her negative review, and McCarthy did not receive a promotion she was expecting. Madsen began treating plaintiffs differently from other employees by requiring them to move boxes and clean their storage lockers, denying their reimbursement requests, and changing plaintiffs' time cards to use some of their sick days. Madsen and Fedewa called plaintiffs nearly every morning at 8:00 a.m. in a manner that was perceived as threatening.[11]

Denial of a transfer or promotion could certainly dissuade a reasonable worker from engaging in a protected activity. *See Brooks,* 229 F.3d at 928 ("Among those employment decisions that can constitute an adverse employment action are termi-

**10.** Although Madsen states in a declaration that she did not *know* that plaintiffs were the ones who complained, and plaintiffs have presented no admissible evidence to the contrary, the fact that Madsen began treating plaintiffs differently after they complained creates a genuine issue of fact as to whether she *suspected* that plaintiffs had complained and retaliated on that basis. *See Price v. Thompson,* 380 F.3d 209, 212–13 (4th Cir.2004) ("[A] reasonable factfinder could elect not to credit fully the testimony supportive of [the hiring official] in favor of the circumstantial evidence tending to show that [the hiring official] knew or strongly suspected that [the plaintiff] was the complainant."); *Hernandez v. Spacelabs Med. Inc.,* 343 F.3d 1107, 1113 (9th Cir.2003) (plaintiff "provided sufficient evidence from which a reasonable jury could infer both that [the supervisor] either knew or

suspected that [plaintiff] had reported the alleged harassment to [the human resources manager], and that there was a causal connection between this knowledge or suspicion and [plaintiff's] termination."). Taking the facts in the light most favorable to the nonmoving party, the court will assume for purposes of this motion that Madsen at least suspected plaintiffs' protected activities.

**11.** Plaintiffs also provide evidence not mentioned in the Complaint that Madsen "hit" Schmitt. This evidence is presented in McCarthy's deposition testimony; Schmitt does not mention the incident. (Bolanos Decl. Ex. A ("McCarthy Dep.") at 67:2–9, 72:13–19 (Docket No. 33).) This incident allegedly took place in July of 2007, before any protected activities took place upon which a claim of retaliation could be based.

nation, dissemination of a negative employment reference, issuance of an undeserved negative performance review and refusal to consider for promotion."). While the other actions committed by Madsen and Fedewa during plaintiffs' employment might be insufficient on their own to meet the "materially adverse" standard, taken together, they too could dissuade a reasonable worker from filing a complaint under the *Burlington* standard. Because the allegedly retaliatory actions began occurring shortly after plaintiffs first complained to Human Resources, plaintiffs have stated a prima facie case of retaliation for the challenged actions taken during their employment.[12]

Defendant then faces the burden of demonstrating a non-retaliatory reason for its actions. *See Steiner,* 25 F.3d at 1464–65. It argues that the negative reviews were justly given for plaintiffs' actions in failing to report time out of the field, and thus Schmitt's transfer was also justly denied. As to McCarthy's promotion, defendant argues that McCarthy was not entitled to receive a promotion. While she was on a "succession list," not everyone on the succession list could or would receive a promotion. Defendant argues that the other actions, such as calling plaintiffs every morning and making them perform tasks outside their normal duties, could not be considered adverse employment actions.

Plaintiffs have sufficiently demonstrated, for purposes of this motion, that defendant's proffered reasons for the adverse employment actions are pretextual. While the reasons given are plausible when considered individually, taking all of Madsen and Fedewa's actions together, there is a question of fact as to whether the actions were retaliatory. Plaintiffs faced treatment that employees who did not engage

in protected activities did not face. In October of 2007, Madsen said to McCarthy that if McCarthy had remained "her girl[,] this wouldn't have happened," which McCarthy took to mean that she would not receive a promotion. (Bolanos Decl. McCarthy Dep. at 192:12–15.) This evidence of retaliatory motivation, combined with the numerous burdens placed on plaintiffs immediately after their protected activities, presents a genuine issue of material fact for trial.

Accordingly, the court will deny defendant's motion for summary judgment on plaintiffs' claim of retaliation under Title VII.

### B. *FEHA Disability Discrimination Claim*

FEHA makes it an "unlawful employment practice ... [f]or an employer, because of the ... physical disability [or] mental disability ... of any person, ... to bar or to discharge the person from employment ... or to discriminate against the person in compensation or in terms, conditions, or privileges of employment." Cal. Gov't Code § 12940(a). To establish a prima facie case of disability discrimination, a plaintiff must show that: (1) she suffered from a disability; (2) could perform the essential duties of the job with or without reasonable accommodations, i.e., she was a "qualified individual"; and (3) was subjected to an adverse employment action because of the disability. *Brundage v. Hahn,* 57 Cal.App.4th 228, 236, 66 Cal. Rptr.2d 830 (2d Dist.1997); *see also Green v. State of Cal.,* 42 Cal.4th 254, 262, 64 Cal.Rptr.3d 390, 165 P.3d 118 (2007) (a plaintiff bears the burden as part of a prima facie case to show he could perform

---

**12.** Because the court finds that plaintiffs have stated a prima facie claim for retaliation, it does not consider whether McCarthy's termination and Schmitt's resignation would also constitute retaliation.

"essential job duties" with or without accommodation).

Similarly, FEHA proscribes an employer from "fail[ing] to make reasonable accommodation for the known physical or mental disability of an ... employee." Cal. Gov.Code § 12940(m). "The elements of a failure to accommodate claim are (1) the plaintiff has a disability under FEHA, (2) the plaintiff is qualified to perform the essential functions of the position, and (3) the employer failed to reasonably accommodate the plaintiff's disability." *Scotch v. Art Inst. of Cal.-Orange Cnty., Inc.,* 173 Cal.App.4th 986, 1009–10, 93 Cal.Rptr.3d 338 (4th Dist. 2009). A reasonable accommodation is "a modification or adjustment to the workplace that enables the employee to perform the essential functions of the job held or desired." *Nadaf–Rahrov v. Neiman Marcus Grp., Inc.,* 166 Cal.App.4th 952, 974, 83 Cal.Rptr.3d 190 (1st Dist.2008).

A plaintiff who seeks to bring a FEHA action must first exhaust her administrative remedies. *Romano v. Rockwell Int'l Inc.,* 14 Cal.4th 479, 492, 59 Cal.Rptr.2d 20, 926 P.2d 1114 (1996). In order to exhaust administrative remedies, a plaintiff must file a complaint with the Department of Fair Employment and Housing ("DFEH") within one year from the date on which the alleged unlawful conduct occurred. Cal. Gov't Code § 12960(b), (d). The DFEH will then issue a right-to-sue notice upon completion of its investigation of the complaint and not later than one year after the initial filing of the complaint. *Id.* § 12965(b). A plaintiff must ordinarily obtain a right-to-sue letter to bring a FEHA claim in court. *Romano,* 14 Cal.4th at 492, 59 Cal.Rptr.2d 20, 926 P.2d 1114 (to exhaust administrative remedies, an employee must file a complaint with DFEH and receive a DFEH right-to-sue notice.)

Plaintiffs admit that they did not actually file complaints with the DFEH; instead, they argue that they constructively did so by filing a charge of discrimination with the EEOC.

The EEOC is authorized to enter into written agreements with "State and local agencies charged with the administration of State fair employment practices laws" regarding the processing of discrimination claims. 42 U.S.C. §§ 2000e–4(g)(1), 2000e–8(b). The EEOC has formed such an agreement with the DFEH. *Downs v. Dep't of Water & Power,* 58 Cal.App.4th 1093, 1097, 68 Cal.Rptr.2d 590 (2d Dist. 1997) ("The EEOC and the DFEH [have] each designated the other as its agent for receiving charges and agreed to forward to the other agency copies of all charges potentially covered by the other agency's statute."); *Surrell v. Cal. Water Serv. Co.,* 518 F.3d 1097, 1104 (9th Cir.2008) (charge filed with DFEH deemed filed with EEOC pursuant to a work-sharing agreement between the two entities). Because plaintiffs filed complaints with the EEOC, which should have been shared with the DFEH, the court finds that plaintiffs' FEHA claims do not fail for failure to file complaints with the DFEH.[13] *See Reed v. UBS Sec., LLC,* No. C 09–5237, 2010 WL 3119200, at *3 (N.D.Cal. Aug. 3, 2010) (holding that the filing of a plaintiff's EEOC complaint is deemed to be a filing with the DFEH). *But see Gordon v. The Bay Area Air Quality Mgmt. Dist.,* No. C08–3630, 2010 WL 147953, at *1 (N.D.Cal. Jan. 12, 2010) (granting the defendant's summary judgment motion on

---

**13.** Even if the complaints are deemed to be filed with the DFEH, plaintiffs might still need to obtain right-to-sue letters from the DFEH. *See Reed v. UBS Sec., LLC,* No. C 09– 5237, 2010 WL 3119200, at *3 (N.D.Cal. Aug. 3, 2010). However, because the court finds that plaintiffs' claims for disability discrimination fail, it need not decide that question.

FEHA claim because the plaintiff failed to obtain right-to-sue letter from DFEH).

Even if her EEOC claim is deemed a DFEH claim, Schmitt only filed a claim with the EEOC for sex discrimination; she never alleged disability discrimination. (Waggoner Decl. Schmitt Dep. Ex. 79.) Thus, she cannot now bring a claim for disability discrimination in court. *See Okoli v. Lockheed Technical Operations Co.*, 36 Cal.App.4th 1607, 1617, 43 Cal.Rptr.2d 57 (6th Dist.1995) (holding that employee who had only filed complaint about discrimination and harassment with DFEH could not bring suit against employer for retaliation without having amended his DFEH complaint to include retaliation). Even if Schmitt could properly bring a claim for disability discrimination, she has provided no evidence suggesting that she even has a disability, much less that she was subject to an adverse employment action because of a disability. Thus, she fails to state a prima facie claim for disability discrimination.

It appears that McCarthy filed a claim for disability discrimination with the EEOC, so the court will consider the merits of her disability discrimination claim. Since defendant does not argue that McCarthy did not have a disability, the court will assume that she did. However, McCarthy has not satisfied the second and third elements of a prima facie case of disability discrimination: that she could perform the essential duties of the job with or without reasonable accommodations, and that she was subjected to an adverse employment action because of her disability. *See Brundage*, 57 Cal.App.4th at 236, 66 Cal.Rptr.2d 830.

■ California's proscription against disability discrimination applies only to "those employees with a disability who can perform the essential duties of the employment position with reasonable accommodation." *Green*, 42 Cal.4th at 264, 64 Cal. Rptr.3d 390, 165 P.3d 118; *see* Cal. Gov't Code § 12940(a)(1). "Therefore, in order to establish that a defendant employer has discriminated on the basis of disability in violation of the FEHA, the plaintiff employee bears the burden of proving he or she was able to do the job, with or without reasonable accommodation." *Green*, 42 Cal.4th at 262, 64 Cal.Rptr.3d 390, 165 P.3d 118.

■ McCarthy admitted that she is unable to work and was terminated because she failed to return to work. Indeed, she began collecting Social Security disability benefits before her termination, while she was on leave. It is clear that no accommodation would allow her to perform the essential elements of her job; thus, she was not a "qualified individual." Employers need not retain an employee on the payroll on an indefinite leave of absence when that employee is unable to work. *See Hanson v. Lucky Stores, Inc.*, 74 Cal. App.4th 215, 226, 87 Cal.Rptr.2d 487 (2d Dist.1999) ("[A] finite leave can be a reasonable accommodation under FEHA, provided it is likely that at the end of the leave, the employee would be able to perform his or her duties."). McCarthy's termination had to do with the fact that she could no longer work; she has provided no evidence that defendant discriminated against her in any way because of her disability.

■ McCarthy's allegation that defendant failed to accommodate her disability similarly fails. McCarthy was given several accommodations for her disability in the form of leaves of absence. She provides no evidence that she asked for any other accommodations or that other accommodations would have allowed her to perform her job. Thus, she has failed to show that defendant failed to accommodate her disability. *See Avila v. Cont'l Airlines, Inc.*, 165 Cal.App.4th 1237, 1252, 82 Cal.Rptr.3d

440 (2d Dist.2008) (to show failure to accommodate, the employee must have requested an accommodation).

Accordingly, plaintiffs' claim of disability discrimination under FEHA fails as a matter of law and the court will grant defendant's motion for summary judgment on that claim.

### C. *Tortious Adverse Employment Action in Violation of Public Policy Claim*

To establish a tort claim for wrongful termination or other adverse employment actions in violation of public policy, a plaintiff must establish (1) an employer-employee relationship; (2) termination or other adverse employment action; (3) the termination or adverse action was a violation of public policy; (4) the termination or adverse action was a legal cause of plaintiff's damages; and (5) the nature and extent of the damages. *Holmes v. General Dynamics Corp.*, 17 Cal.App.4th 1418, 1426 n. 8, 22 Cal.Rptr.2d 172 (4th Dist.1993). A plaintiff "must prove that his dismissal violated a policy that is (1) fundamental, (2) beneficial for the public, and (3) embodied in a statute or constitutional provision." *Turner v. Anheuser–Busch, Inc.*, 7 Cal.4th 1238, 1256, 32 Cal. Rptr.2d 223, 876 P.2d 1022 (1994) (footnotes omitted).

Plaintiffs' claim for wrongful termination and other adverse employment actions in violation of public policy is derivative of their statutory claims. *See Sanders v. Arneson Prods., Inc.*, 91 F.3d 1351, 1354 (9th Cir.1996) (citing *Jennings v. Marralle*, 8 Cal.4th 121, 135–36, 32 Cal.Rptr.2d 275, 876 P.2d 1074 (1994)) (no public policy

claim against employers who have not violated the law). Because plaintiffs' claim for Title VII retaliation survives summary judgment, so too does their public policy claim.[14] *See Phillips v. St. Mary Regional Med. Ctr.*, 96 Cal.App.4th 218, 234, 116 Cal.Rptr.2d 770 (4th Dist.2002) ("[F]ederal law, and in particular, Title VII, may supply an alternative public policy basis for a wrongful termination claim.").

IT IS THEREFORE ORDERED that defendant's motion for summary judgment be, and the same hereby is, GRANTED as to plaintiffs' claim for disability discrimination under FEHA, and DENIED as to plaintiffs' claims for sexual harassment and retaliation under Title VII and tortious adverse employment action in violation of public policy.

---

**14.** Plaintiffs also argue that California Labor Code section 1102.5(c), which prohibits employers from "retaliat[ing] against an employee for refusing to participate in an activity that would result in a violation of state or federal statute, or a violation or noncompli-ance with a state or federal rule or regulation," provides an independent basis for showing a public policy violation. However, plaintiffs have not alleged nor do they provide any evidence to support a finding that any such violation occurred.